Virginia HABJAN, Respondent,

v.

Jime EARNEST, et al., Vernon County Commissioners, Appellants.

No. WD 56611.

Missouri Court of Appeals, Western District.

Oct. 5, 1999.

Lynn M. Ewing, III, Pros. Atty., Vernon
County, Nevada, for appellant.

Kendall R. Vickers, Nevada, for respondent.

Before: EDWIN H. SMITH, P.J., HOWARD, J., and TURNAGE, Sr.J.

EDWIN H. SMITH, Presiding Judge.

Jime Earnest, Neal Gerster, and Bonnie McCord, the duly elected county commissioners for Vernon County, Missouri, appeal the summary judgment of the circuit court for the respondent, Virginia Habjan, on her declaratory judgment action against them seeking a declaration from the court that she was entitled to $14,000 in annual compensation from Vernon County (the county) as the Vernon County Public Administrator for the calendar year of 1997.

In their sole point on appeal, the appellants claim that the trial court erred in granting the respondent's motion for summary judgment because, based on the undisputed material facts alleged in her motion, she was not entitled to judgment as a matter of law on her claim for declaratory judgment.

We reverse and remand.

## Facts

On October 31, 1995, the Salary Commission for Vernon County (the salary commission) met in compliance with § 50.333.7 [1] for the purpose of determining the amount of compensation to be paid to county officers who would be elected at the general election in November 1996 and would begin their terms on January 1, 1997. The Vernon County Prosecuting Attorney, Neal Quitno, was elected chairman of the meeting.

At the meeting, appellant Jime Earnest, the presiding commissioner of the county, made a motion to increase the salaries of all county officers to "100% the maximum allowed by statutes of the State of Missouri beginning January 1, 1997." Quitno asked Earnest whether his motion included the public administrator, and he replied that it did. The recorder of deeds, Doug Shupe, seconded the motion, and a discussion of the motion followed. During the discussion of the motion, Earnest stated:

I might want to clarify my motion by saying that in the case of the public administrator the county fees not to exceed $10,000. So we don't have the question that you have on your mind that I think the intent was $10,000 maximum. So that someone might not come back in 5 years and argue that was $4,000 plus $10,000.

Following further discussion, the salary commission unanimously approved the motion.

On December 13, 1995, pursuant to § 50.333.8, Quitno filed a report of compensation with the county clerk wherein he stated that the salary commission had set the public administrator's annual salary for the 1997–1998 term at $10,000, if the fees received by him or her annually were less than $25,000.

In the 1996 general election, the respondent was re-elected to a four-year term, § 473.730, RSMo Supp.1996, commencing on January 1, 1997. As the duly elected public administrator, she earned fees in 1997 of $34,522.47. On December 2, 1997, she submitted a statement to the Vernon County Commission for payment to her of $10,000 as compensation for her services rendered as the public administrator in 1997. Sometime thereafter, but prior to March 24, 1998, she made a demand on the respondents for payment of $14,000 as compensation for 1997, claiming that such payment was authorized by §§ 473.739, RSMo Supp.1996, and 50.333.7. The appellants refused to order the county clerk to pay her the requested compensation, claiming that pursuant to § 473.739, RSMo 1994, which was in effect at the time of the salary commission's October 31, 1995, meeting setting her 1997 salary, she was not entitled to such compensation.

On March 24, 1998, the respondent filed a petition for a writ of mandamus in the Circuit Court of Vernon County to compel the appellants to order the county clerk to pay her $14,000 as compensation for her

---

1. All references to § 50.333 are to RSMo Supp.1995, unless otherwise indicated.

services rendered during calendar year 1997. On April 23, 1998, the appellants filed a motion to dismiss the respondent's petition, claiming that mandamus was not the proper remedy for the relief sought.

On July 17, 1998, the respondent filed her first amended petition, adding as Count II a claim for declaratory judgment, seeking a determination of the amount of compensation due her from the county for her work as public administrator in 1997. Also on that date, she filed a motion for summary judgment on both counts of her petition. On August 17, 1998, the appellants filed their response to the respondent's motion for summary judgment and their motion for summary judgment.

On August 27, 1998, the trial court sustained the respondent's motion for summary judgment as to Count II, finding that there was no genuine dispute of material facts and that, as a matter of law, pursuant to §§ 50.333.7 and 473.739, RSMo Supp. 1996, she was entitled to be paid $14,000 as compensation for her services rendered as public administrator in calendar year 1997 and ordering the appellants to authorize the county clerk to pay her the same. As to Count I of the respondent's petition, the trial court sustained the appellants' motion to dismiss.

This appeal follows.

### Standard of Review

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

**2.** All rule references are to the Missouri Rules of Civil Procedure (1998), unless otherwise

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377.

When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (citations omitted).

### I.

In their sole point on appeal, the appellants claim that the trial court erred in granting the respondent's motion for summary judgment because, on the undisputed material facts alleged in her motion, she was not entitled to judgment, as a matter of law, declaring that her 1997 compensation from Vernon County was $14,000. Specifically, they claim that the trial court erred in declaring that the respondent was entitled to 1997 compensation of $14,000 because, in doing so, it misapplied the law as found in § 50.333.7 and the applicable version of § 473.739.1, which they contend was § 473.739.1, RSMo 1994.

To be entitled to summary judgment under Rule 74.04,[2] the respondent, as a movant/claimant, was required to establish that: (1) there was no genuine dispute as to the material facts on which she relied to recover and had the burden of persuasion at trial, and that (2) on these undisputed facts, she was entitled to judgment as a matter of law. *ITT Commercial Fin.*

indicated.

*Corp.*, 854 S.W.2d at 381. There is no dispute in this case as to the material facts on which the respondent relied for summary judgment. The dispute is whether, on the facts alleged in her motion for summary judgment, she was entitled to judgment, as a matter of law, declaring that she was entitled to compensation of $14,000 from Vernon County for the calendar year 1997.

In declaring that the respondent was entitled to 1997 compensation of $14,000, the trial court applied §§ 50.333.7 and 473.739.1, RSMo Supp.1996. Section 50.333 establishes a salary commission in every nonchartered county, such as Vernon County. § 50.333.1. It also sets forth the procedure whereby the duly constituted salary commission is to meet on or before November 30 in odd numbered years, commencing in 1989, for the purpose of determining the amount of compensation to be paid by the county to county officers elected in the next general election. § 50.333.7.

Section 50.333.7 provides, in pertinent part:

7. For the year 1989 and every second year thereafter, the salary commission shall meet in every county as many times as it deems necessary on or prior to November thirtieth of any such year for the purpose of determining the amount of compensation to be paid to county officials.... The salary commission shall then consider the compensation to be paid for the next term of office for each county officer to be elected at the next general election.... If the salary commission votes to increase the compensation, all officers or offices whose compensation is being considered by the commission at that time, shall receive the same percentage of the maximum allowable compensation. However, for any county in which all officer[s'] salaries have been set at one hundred percent of the maximum allowable compensation, the commission may vote to increase the compensation of county officers at that or any subsequent meeting of the salary commission without regard to any law or maximum limitation previously established by law. Such increase shall be expressed as a percentage of the compensation being paid during the term of office when the vote is taken, and each officer whose compensation is being established by the salary commission at that time shall receive the same percentage increase over the compensation being paid for that office during the term when the vote is taken. This increase shall be in addition to any increase mandated by an official's salary schedule because of changes in assessed valuation or population during the current term....

Applying § 50.333.7 to the instant case, the trial court found in its judgment for the respondent that:

5. Section 50.333 RSMo. requires that if the Salary Commission votes to increase the compensation of any officers, that all officers or offices whose compensation is being considered by the Commission at that time shall receive the same percentage of the maximum allowable compensation. No provision of that statute permits or authorizes any different treatment of the Public Administrator....

6. [A]ny "intent" by the Salary Commission to treat the Public Administrator differently from other elected officials whose compensation was being considered at that time, if effected, was contrary to Statute, void, and ineffective as a matter of law.

In other words, the trial court found that, pursuant to § 50.333.7, the respondent was required to receive the same increase in compensation as all other county officers, as voted on by the salary commission at its 1995 meeting. With respect to the amount of this increase, the trial court found that it was undisputed that the salary commission had met and voted on October 31, 1995, to increase county officers' compensation to 100% of each officer's "maximum allowable compensation," entitling the respondent to this same amount.

" '[M]aximum allowable compensation,' as used in [§ 50.333] means the highest compensation which may be paid to the specified officer in the particular county based on the salary schedule established by law for the specified officer." § 50.333.12. Thus, to determine the respondent's maximum allowable compensation, the trial court was required to consult the salary schedule for public administrators, which it found was contained in § 473.739, RSMo 1994. The version of § 473.739 that was in effect at the time the salary commission met on October 31, 1995, provided, in pertinent part:

> 1. Each public administrator, except in counties of the first class with a charter form of government, who does not receive at least twenty-five thousand dollars in fees as otherwise allowed by law shall receive annual compensation of four thousand dollars and each such public administrator who does not receive at least twenty-five thousand dollars in fees may request the county salary commission for an increase in annual compensation and the county salary commission may authorize an additional increase in annual compensation not to exceed ten thousand dollars.

§ 473.739.1, RSMo 1994. This subsection was amended, effective August 28, 1996, to provide, in pertinent part:

> 1. Each public administrator, except in counties of the first class with a charter form of government, who does not receive at least twenty-five thousand dollars in fees as otherwise allowed by law shall receive annual compensation of four thousand dollars and each such public administrator who does not receive at least forty-five thousand dollars in fees may request the county salary commission for an increase in annual compensation and the county salary commission may authorize an additional increase in annual compensation not to exceed ten thousand dollars.

§ 473.739.1, RSMo Supp.1996. The only change was to substitute "forty-five" for "twenty-five" in subsection one as to the amount of fees that could be received by the public administrator and still be eligible for the applicable increase in compensation. § 473.739.1, RSMo Supp.1996. The 1996 version was amended, effective August 28, 1997. It amended subsection two, but made no changes to subsection one.[3] § 473.739.1, RSMo Supp.1997. The trial court found that the respondent received $34,522.47 in fees for 1997, and, relying on the 1996 version of § 473.739.1 and its interpretation of the same, found she was entitled to compensation from the county of $14,000.

In claiming that the trial court misapplied the law, the appellants contend, relying on *Cantwell v. Douglas County Clerk*, 988 S.W.2d 51, 56 (Mo.App.1999), that § 50.333.7, to the extent it refers to the maximum allowable compensation for county officers to determine the salary of county officers, has no application to the salary commission's determination of the compensation for a public administrator, such as the respondent. They contend further that the trial court also misapplied the law by relying on the 1996 version of § 473.739.1 in declaring that the county owed the respondent $14,000 for 1997, rather than relying on the 1994 version, under which they contend the respondent was not entitled to any compensation from the county because she made more than $25,000 in fees, the threshold under the 1994 version for both the mandatory minimum compensation of $4,000 and the discretionary additional compensation of $10,000. For her part, the respondent contends that § 50.333.7 did apply in determining her compensation for 1997, requiring her to receive 100% of her maximum allowable compensation under § 473.739.1, and that the salary schedule in the 1996 version of § 473.739.1 was the

---

**3.** All three versions of § 473.739 provide in subsection two that $2,000 of the allowed annual compensation is payable only if the public administrator has completed at least twenty hours of specified classroom instruction. § 473.739.1, RSMo 1994, Supp.1996 & Supp.1997. It was undisputed that the respondent had completed this requirement.

appropriate one to be used in determining her maximum allowable compensation, which was $14,000.

## A. Does § 50.333.7 apply in determining the annual compensation of a public administrator as a percentage of his or her maximum allowable compensation?

■ In deciding this appeal, the first question we must answer is whether § 50.333.7, in determining compensation for a specific county officer as a percentage of the officer's maximum allowable compensation, was applicable to the salary commission's determination of the respondent's 1997 county compensation pursuant to § 473.739.1. In answering this question, we are necessarily required to interpret §§ 50.333.7 and 473.739.1. As to § 473.739.1, it matters not which version we interpret. This is so, in that, in answering the first question being addressed, all three versions of the statute render the same result.

■ In interpreting statutes, our purpose is to ascertain the intent of the legislature. *State ex rel. Riordan v. Dierker*, 956 S.W.2d 258, 260 (Mo. *banc* 1997). In doing so, we look to the language used, giving it its plain and ordinary meaning. *Id.* When a word used in a statute is not defined therein, it is appropriate to derive its plain and ordinary meaning from a dictionary. *American Healthcare Management, Inc. v. Director of Revenue*, 984 S.W.2d 496, 498 (Mo. *banc* 1999). The courts are without authority to read into a statute a legislative intent which is contrary to the intent made evident by giving the language employed in the statute its plain and ordinary meaning. *Kearney Special Rd. Dist. v. County of Clay*, 863 S.W.2d 841, 842 (Mo. *banc* 1993). When the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied. *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. *banc* 1996). Where two statutes concerning the same subject matter, when read individually, are unambiguous, but conflict when read together, we will attempt to reconcile them and give effect to both. *Wells v. Missouri Property Ins. Placement Facility*, 653 S.W.2d 207, 213 (Mo. *banc* 1983). However, if they cannot be reconciled, the more specific will control over the more general. *Greenbriar Hills Country Club v. Director of Revenue*, 935 S.W.2d 36, 38 (Mo. *banc* 1996).

A reading alone of § 50.333.7 does not disclose any ambiguity. The legislative intent as to this section is clear from the language used, giving it its plain and ordinary meaning. We find that the legislature intended by § 50.333.7 that the salary commission meet on or before November 30 in odd numbered years for the purpose of determining the amount of annual compensation "to be paid for the next term of office for each county officer to be elected at the next general election." § 50.333.7. At such meeting, if the salary commission votes to increase the compensation of any county officer, all officers whose compensation is being considered are required to receive the same percentage increase in their maximum allowable compensation, which is to be determined by looking to the specific statutory salary schedule established for that officer. § 50.333.7.

In contending that the trial court was correct in granting her motion for summary judgment, pursuant to § 50.333.7 and the 1996 version of § 473.739.1, the respondent agrees with the appellants as to the intent of the legislature as to § 50.333.7. The dispute centers on its application when read with § 473.739.1, and which version of this section applied and the proper interpretation to be given to it. The respondent argues that the 1996 version of § 473.739.1 applied and should be interpreted such that a public administrator receiving less than $45,000 in fees, but more than $25,000, not only is entitled to request the $10,000 referred to in the statute as an "additional increase in annual compensation," but also the $4,000 in compensation mentioned in the statute. From

this, she contends that, pursuant to the 1996 version of § 473.739.1, her maximum allowable compensation for purposes of § 50.333.7 was $14,000.

In the 1994 version of § 473.739.1, the threshold for receipt of the $4,000 and the $10,000 in annual compensation was the same, $25,000, with the $4,000 being guaranteed without any action by the salary commission and the $10,000 being subject to the discretion of the commission. As such, the "additional increase in annual compensation" language in the statute made perfect sense, that the $10,000 was in addition to the $4,000. In the 1996 version, however, the legislature, without making any other amendments, changed the threshold for receiving the "additional increase in annual compensation" to $45,-000 in fees received. Thus, after the amendment, public administrators receiving less than $45,000 in fees, including those receiving *more* than $25,000, were entitled to request the salary commission to authorize an "additional increase in annual compensation not to exceed ten thousand dollars." As to those public administrators receiving *less* than $25,000, the intent of the statute remained the same as in the 1994 version and is not in dispute here – that the $10,000 maximum increase was intended to be in addition to the guaranteed $4,000 in annual compensation. The dispute arises as to the legislature's intent with respect to the maximum allowable increase as to those public administrators receiving less than $45,000 in fees, but *more* than $25,000.

■ The appellants argue that by conditioning the $4,000 in annual compensation on receipt of less than $25,000 in fees, the legislature intended that a public administrator receiving less than $45,000 in fees, but more than $25,000, would be limited to a total increase in annual compensation of $10,000. The respondent, however, argues that by referring to the $10,000 as an "additional increase in annual compensation," the legislature intended that the $10,000 be in addition to the $4,000, for a total increase available of $14,000. We

agree. In interpreting statutes we are required to give meaning to all the terms used. *City of Ellisville v. Lohman,* 972 S.W.2d 527, 534 (Mo.App.1998). As such, giving the language used in § 473.739.1, RSMo Supp.1996, its plain and ordinary meaning, it is clear that the legislature intended that the $10,000 "additional increase in annual compensation" was to be in addition to the $4,000, otherwise this language would be rendered mere surplusage. *City of Ellisville,* 972 S.W.2d at 534.

■ As to the appellants' argument that our interpretation is in conflict with and would destroy the threshold requirement of the statute, that in order to receive the $4,000, a public administrator must receive less than $25,000, we disagree. Under our interpretation of the statute, the requirement remains that in order to receive the *guaranteed* $4,000 in annual compensation, requiring no action on the part of the salary commission, a public administrator must receive less than $25,000 in fees. However, in the case of a public administrator making less than $45,-000 in fees, but *more* than $25,000, the $4,000 is not guaranteed, but like the additional $10,000, is subject to the discretion of the salary commission. Our interpretation of the statute would satisfy the clear purpose of the statute to insure that those public administrators receiving the least in fees would receive a minimum amount of annual compensation from the county, $4,000, which would not be subject to the individual vagaries of the various salary commissions throughout the state, while allowing a case-by-case review by them to determine whether to authorize not only the $10,000 but the $4,000 in cases involving public administrators receiving less than $45,000 in fees, but more than $25,-000.

In summary, as to the interpretation of § 473.739.1, RSMo Supp.1996 and Supp. 1997, we find that the intent of the legislature can be determined from the language used, giving it its plain and ordinary meaning, and thus, it is not ambiguous on its

face. *Burks v. City of Licking*, 980 S.W.2d 109, 118 (Mo.App.1998). The statute, as we interpret it, provides for three classifications of public administrators for the purpose of determining their annual compensation from the county. The first includes those public administrators who receive less than $25,000 in fees for the year in question. With respect to these individuals, the statute provides guaranteed annual compensation of $4,000 and also allows them to request the salary commission to authorize an additional $10,-000 in compensation. The second classification includes those public administrators who receive more than $25,000 in fees, but less than $45,000. As to this group, the statute provides that they may request the salary commission to authorize additional compensation totaling $14,000. As to the third classification, which includes those public administrators receiving more than $45,000 in fees, the statute does not provide or allow any annual compensation from the county.

Although, as just discussed, we do not find §§ 50.333.7 and 473.739.1 to be ambiguous on their face, when read together to determine the compensation of a public administrator, we agree with the decision in *Cantwell,* that they do conflict in two significant respects, making them irreconcilable. *Cantwell,* 988 S.W.2d at 55–56. In *Cantwell,* the Southern District of this court was confronted with the same question we must answer here. However, there, unlike here, the trial court found that in reading §§ 50.333.7 and 473.739.1 together, it was convinced that the " 'legislature intended for the compensation of the public administrator to be considered separately [from other county officers] by the salary commission.' " *Cantwell,* 988 S.W.2d at 53 (*quoting the trial judge*). In affirming the trial court, the Southern District found that the implicated statutes presented "a latent ambiguity and [were], in fact, conflicting." *Id.* at 54. Specifically, the court found that the phrase "maximum allowable compensation" in § 50.333.7 was rendered ambiguous in its application to § 473.739.1, requiring statutory construction. *Id.* As such, it construed § 473.739.1 "as creating an independent method for determining compensation for public administrators." *Id.* at 56. It affirmed the trial court on the basis that the two statutes were "irreconcilably conflicting insofar as § 50.333.7 purports to apply the phrase 'maximum allowable compensation' to the determination of *all* county officers' compensation." *Id.* Accordingly, the court held that the specific statute, § 473.739.1, controlled over the general, § 50.333.7, and thus, "to the extent § 50.333.7 speaks of 'maximum allowable compensation,' its provisions are inapplicable to the commission's determination of compensation for public administrators under § 473.739.1." *Id.*

Although, unlike the *Cantwell* court, we do not believe it is necessary to construe the two statutes in question, in that, in our opinion, they are unambiguous on their face, we do, based on our discussion, *infra,* agree with the court's holding that the statutes are irreconcilably conflicting such that the provisions of § 50.333.7, as to "maximum allowable compensation," are inapplicable in determining annual compensation for public administrators under § 473.739.1. In *Cantwell,* the court, in determining that §§ 50.333.7 and 473.739, RSMo 1994, could not be reconciled in determining the public administrator's compensation from the county, first pointed ed out that:

> [Section] 473.739.1 is the only county officer compensation statute that does not contain a well-delineated "salary schedule" and that vests discretion in the county salary commission to set the officer's compensation within a specified range of acceptable compensation.

*Id.* at 55. As to this conflict, we would further point out that, although the salary commission has discretion in whether to authorize all or part of the additional increase in compensation, it is required, under § 50.333.7, to determine any increase

as a percentage of the maximum allowable compensation for the county officers under consideration; and once it votes to increase their compensation, the statute requires that percentage allowed be applied across the board and, unlike § 473.739.1, vests no further discretion in the salary commission. The *Cantwell* court also pointed out that §§ 50.333.7 and 473.739.1 conflicted and were irreconcilable because:

> [Section] 473.739.1 states that a "public administrator who does not receive at least twenty-five thousand dollars in fees *may request* the county salary commission for an increase in annual compensation." (Emphasis added.) No other county officer compensation statute contains a similar provision. Other county officer compensation statutes simply mandate that those officers' salaries be set in accordance with the applicable salary schedules. The fact that the legislature does not require the salary commission, as a matter of course, to consider authorizing "additional" compensation for a public administrator indicates to us that the statutes should be distinguished.

*Id.* at 55–56. With respect to this conflict, it should also be noted that not only do the other compensation statutes not require a request by a county officer for increased compensation, but § 50.333.7 expressly provides that the "salary commission *shall* ... consider the compensation to be paid for the next term of office for each county officer to be elected at the next general election." (Emphasis added.) We can assume that the legislature intended these differences in the statutes inasmuch as it, on several occasions, amended them, while maintaining the differences. *Cantwell,* 988 S.W.2d at 56.

For the reasons given and based on our agreement with the decision in *Cantwell,* we find that the trial court in this case did misapply the law in entering summary judgment for the respondent declaring her 1997 compensation from the county to be $14,000 by applying the provisions of § 50.333.7, setting a county officer's annual compensation as a percentage of his or her "maximum allowable compensation," as defined in § 50.333.12.

Having determined that the "maximum allowable compensation" provision in § 50.333.7 does not apply in determining the amount of annual compensation to be paid to public administrators and that § 473.739.1 creates an independent method for making that determination, does not end our inquiry. In order to completely dispose of this appeal, we must still determine whether, as a matter of law, on the undisputed facts alleged, the respondent was entitled to the $14,000 awarded in compensation from the county for 1997, pursuant to the applicable provisions, if any, of § 50.333.7 and the applicable version of § 473.739.1.

**B. Was the respondent, as a matter of law, entitled to 1997 compensation of $14,000, pursuant to the applicable provisions, if any, of § 50.333.7 and the applicable version of § 473.739.1?**

In deciding the question posed, we logically have to address whether the implicated provisions of § 50.333.7, which have not already been found to be inapplicable to a determination of the compensation of public administrators, are applicable as not being irreconcilably in conflict with the procedure set forth in § 473.739.1 for determining the compensation of a public administrator.[4] This is so in that the decision of whether to authorize the "additional increase in annual compensation" which a public administrator may request under § 473.739.1, regardless of which version, is left to the discretion of the salary commission. § 50.333.7. Consequently, the ques-

---

**4.** In *Cantwell,* the court, after holding that "[a]ccordingly, to the extent § 50.333.7 speaks of 'maximum allowable compensation,' its provisions are inapplicable to the commission's determination of compensation for public administrators under § 473.739.1," noted that "[i]nsofar as applicable, all other provisions of § 50.333.7 continue to apply to determinations made under § 473.739.1." *Cantwell,* 988 S.W.2d at 56 & n. 3.

tion arises as to whether the provisions of § 50.333.7, with respect to when the salary commission must meet to consider compensation and for what period of time compensation is to be authorized, apply in the salary commission's determination of the annual compensation of a public administrator, pursuant to § 473.739.1. In this respect, the appellants, in contending as they do, that the 1994 version applies, are asserting that § 50.333.7 applies to the extent that it requires the commission to meet in odd numbered years to "consider the compensation to be paid for the next term of office for each county officer to be elected at the next general election." § 50.333.7. Applying these provisions and given the fact that the commission met on October 31, 1995, to determine compensation for elected officers whose terms commenced on January 1, 1997, the appellants conclude that the 1994 version applied to deny the respondent any compensation from the county for 1997 because she received more than $25,000 in fees in 1997.

The respondent makes the argument that the 1996 version of § 473.739.1 should apply because it was the one in effect during the time for which the respondent was to be compensated, the calendar year 1997. As to the 1997 calendar year, there were actually two versions of § 473.739 in effect: (1) the 1996 version, effective August 28, 1996; and (2) the 1997 version, effective August 28, 1997. It matters not to the respondent's argument whether the 1996 or 1997 version is applied in that as to subsection one of § 473.739, the pertinent subsection to our discussion, both versions of § 473.739.1 are identical, with the only change being to subsection two of the section. We would agree with the appellants that, if the implicated provisions of § 50.333.7 apply, then the 1994 version of § 473.739.1 would apply, foreclosing any annual compensation to the respondent. The issue then is whether the provisions of § 50.333.7 in question apply, as the appellants assert.

In deciding the issue presented, we must determine whether the implicated

provisions of § 50.333.7 conflict with the provisions of § 473.739.1, setting forth the procedure to establish the compensation of public administrators, and if so, can they be reconciled. In this respect, as noted, *supra*, § 473.739.1, unlike compensation statutes for other county officers, requires a public administrator to "request" the salary commission to consider the additional increase in annual compensation for public administrators. Hence, as previously discussed, such an increase in the public administrator's annual compensation, unlike that of other county officers, is not automatically considered by the salary commission when it meets to "consider the compensation to be paid for the next term of office for each county officer to be elected at the next general election," as required by § 50.333.7.

Section 473.739.1 is silent as to when the request for additional compensation is to be made. Nonetheless, this does not render the statute ambiguous. Because the requested compensation allowed under the statute is contingent on the public administrator receiving less than a stated amount in fees for the calendar year, we believe that, based on any fair reading of the language employed and giving it its plain and ordinary meaning, the legislature intended for the request to be made after the public administrator's fees had been determined for the calendar year or years for which compensation is being requested. It is a logical interpretation inasmuch as a contrary interpretation could lead to a situation where a public administrator, who under the statute was entitled to consideration for increased compensation, but was not in office when the commission last met before the term in question commenced, is foreclosed from requesting increased compensation because his or her predecessor did not request it at such meeting of the commission.

Our interpretation of § 473.739.1 would not conflict with § 50.333.7 to the extent it requires the salary commission to meet in odd numbered years for the purpose of

establishing the compensation of county officers. For example, under this interpretation, when the commission meets in 1999, it could take up any request by the public administrator for increased compensation for the years 1997 and 1998. However, our interpretation of § 473.739.1 would conflict with § 50.333.7 to the extent it provides for a determination of compensation for the "next term of office" of the newly elected officers. We cannot reconcile this conflict, and thus, as in the case of determining whether the "maximum allowable compensation" language § 50.333.7 applied, we are forced to follow the more specific of the statutes, § 473.739.1, as we interpret it, providing that any request for an increase in the compensation of a public administrator, based on fees received for the year, would have to be considered and allowed by the salary commission at its next regularly scheduled meeting after the fees received are determined for the calendar year or years for which compensation is being requested. *Greenbriar Hills Country Club*, 935 S.W.2d at 38. Having made this determination, it follows then that the version of § 473.739.1 that is to be applied in our case is the version in effect as of December 31 of the year prior to the respondent's commencing her term of office for which compensation is being sought. This is so in that, as implicitly recognized in § 50.333.7, compensation, as authorized by the legislature, cannot be increased during the officer's term of office. Mo. CONST. art. VII, § 13.

In this case, the respondent was seeking compensation for her services rendered as public administrator in calendar year 1997. Her term of office as to this year commenced on January 1, 1997. Hence, the version of § 473.739.1 in effect on December 31, 1996, heretofore referred to as the 1996 version, would have been controlling. As such, the respondent would have been

entitled to request the additional compensation of $14,000 under the 1996 version of § 473.739.1. However, any such request would have to have been made after December 31, 1997, for consideration at the 1999 meeting of the salary commission. Even assuming that there had been such a request by the respondent, and the record reflects otherwise, there is no dispute that at the time of the trial court's judgment for the respondent, the salary commission had not yet met in 1999 and had not authorized compensation for the respondent based on § 473.739.1, RSMo Supp. 1996. At the time of the trial court's summary judgment for the respondent, the last meeting of the salary commission was held on October 31, 1995, at which time the 1994 version was in effect, which only allowed additional compensation if the respondent received less than $25,000 in fees, which was not the case for 1997, having received $34,255.45 in fees.[5] Thus, applying §§ 50.333.7 and 473.739.1, RSMo Supp.1997, to the undisputed facts of this case, the respondent, as a matter of law, was not entitled to a judgment declaring her 1997 county compensation to be $14,000. Whether she receives such additional compensation is a matter which would have to be considered at the 1999 meeting of the salary commission, assuming that the respondent requests it to consider this matter.

### Conclusion

Ordinarily, in reversing a summary judgment for a party, we would simply remand the cause to the circuit court for further proceedings consistent with our opinion. *Farmers Ins. Co. v. McFarland*, 976 S.W.2d 559, 566 (Mo.App.1998). However, given our holding that, as a matter of law, the respondent here was not entitled to judgment on her petition for declaratory

**5.** Even assuming that the respondent had "requested" annual compensation at the 1995 meeting and the salary commission approved it, the record is undisputed that it approved annual compensation of $10,000 only *if* she received less than $25,000 in fees for the year, which she did not. Hence, the respondent, under a contrary interpretation of the statute, would not be entitled to any annual compensation from the county as a result of the salary commission's action in 1995.

judgment, we reverse the judgment of the court for the respondent, declaring that she was entitled to $14,000 in annual compensation for 1997, and remand the cause to the circuit court to enter judgment for the appellants on the respondent's petition for declaratory judgment. *Id.*

All concur.