Judy L. WOOD, now Fletcher, Appellant,

v.

Robert L. WOOD, Respondent.

No. WD 60337.

Missouri Court of Appeals, Western District.

Jan. 21, 2003.

Mitzi J. Alspaugh, Kansas City, MO, for Appellant.

Jane C. Sachs, Savannah, MO, for Respondent.

Barbara A. Braznell, St. Joseph, MO, Guardian ad litem.

Before ULRICH, P.J., and SMITH and HARDWICK, JJ.

EDWIN H. SMITH, Judge.

Judy L. Wood (mother) appeals from the judgment of the Circuit Court of Buchanan County modifying its previously modified decree dissolving her marriage to the respondent, Robert L. Wood (father), with respect to its awards of custody and child support. In the dissolution proceeding, the parties were awarded joint legal and physical custody of their three minor children, Sherri, Robert II, and Spencer, with their primary residence to be with the mother, who was awarded $475 per month in child support. Thereafter, the trial court modified its decree by awarding sole legal and physical custody of Sherri to the mother, and sole legal and physical custody of Robert II and Spencer to the father, with the father awarded child support of $56 per month. In the modification proceeding from which this appeal arises, the trial court changed the sole legal and physical custody of Robert II from the father to the mother, as she requested in her cross-motion to modify custody, but denied her request for sole legal and physical custody of Spencer.

The mother raises six points on appeal. In Point I, she claims that "the trial court abused its discretion in limiting [her] time to present her case by failing to prepare [a] pre-trial order." In Point II, she claims that the trial court erred in overruling her cross-motion to modify its prior custody decree, seeking sole legal and physical custody of Spencer, because in doing so it failed to comply with § 452.375.6 [1] in that it failed to make "specific written findings" in its judgment with respect to the public policy custody considerations found in § 452.375.4 and the best interest factors found in § 452.375.2. In Point III, she claims that the trial court erred in denying her cross-motion to modify the custody of Spencer because it was against the weight of the evidence in that the court's findings made in support of its judgment denying the mother's cross-motion were not supported by any evidence in the record. In Point IV, she claims that the trial court erred in awarding guardian *ad litem* (GAL) fees of $5,081.20 because the award was not supported by substantial evidence in that the GAL's fee statement, on which the trial court's award was based, was not admitted in evidence. In Point V, the mother claims that the trial

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

court erred in its "deviation from the statutory child support guidelines" because the court "failed to make specific relevant findings for deviation from the statutory child support guidelines." In Point VI, she claims that "the trial court erred in determining whether the relationship between the child, Spencer, and his stepmother is superior to the relationship with Spencer and his Mother."

Affirmed.

### Facts

The parties were married on December 18, 1982. Three children were born of the marriage: Sherri, born June 6, 1983; Robert II, born July 12, 1985; and Spencer, born September 6, 1991. The parties' marriage was dissolved by the Circuit Court of Buchanan County on December 23, 1995. In the dissolution decree, the court, *inter alia*, awarded the parties joint legal and physical custody of the three minor children, with the children's primary residence to be with the mother. The father was to pay the mother $475 per month in child support. Over the next four years, the dissolution decree was modified several times upon motions by both parties. As a result of those modifications, the mother, at the time of this proceeding, had sole legal and physical custody of Sherri, while the father had sole legal and physical custody of Robert II and Spencer.

On September 27, 2000, the father filed a "Motion to Modify Judgment Entry of Dissolution of Marriage" in the Circuit Court of Buchanan County, in which he requested a modification of the decree, awarding him sole legal and physical custody of Sherri; awarding the mother the sole legal and physical custody of Robert II; and restricting the mother's visitation with Spencer. On November 27, 2000, the mother filed an answer to the father's motion and a cross-motion to modify in which she requested that the trial court award the parties joint legal and physical custody of Sherri and award her sole legal and physical custody of Robert II and Spencer.

On February 27, 2001, the trial court held a pre-trial conference with counsel for the parties and the children's GAL, Barbara Braznell, from which the court determined that the primary dispute was over the custody of the parties' youngest child, Spencer. In addition, the parties agreed that the mother should retain sole legal and physical custody of Sherri and would be awarded sole legal and physical custody of Robert II. As a result, the only issue left for trial was the change of custody of Spencer sought by the mother in her cross-motion and the father's request for restricted visitation by the mother with Spencer in the event the mother's cross-motion as to Spencer was denied.

On March 12, 2001, the trial court interviewed Spencer, *in camera*. On that same date, the parties' motions were set for a one-day trial on May 24, 2001. Neither party objected to the trial court's one-day time limitation on the presentation of evidence.

On May 24, 2001, the parties' motions were taken up and heard. Prior to the presentation of evidence, the trial court informed the parties that each party would be limited to two and one-half hours to present evidence. Neither party objected to that time limitation. The father proceeded to introduce evidence, which, besides testimony from himself and his current wife, consisted primarily of testimony from social workers and school officials as to their interactions with Spencer and their observations of his behavior. At the conclusion of the father's evidence, the mother offered testimony from several witnesses,

which included, among others, a family therapist, her mother, and herself.

At the close of the mother's evidence, the GAL testified with respect to her opinion concerning the custodial arrangement that would be in Spencer's best interests. In that regard, she testified that it would not be in Spencer's best interests to transfer his custody to the mother. At the conclusion of this testimony, the trial court asked the GAL about the hours she had expended in the case and the fee she was requesting. The GAL advised the court that she would need time to submit a fee statement. The trial court ordered the GAL to file her fee statement with the court and to provide copies to the parties. The court urged the parties to come to some agreement with respect to the GAL fee, at least as to the time expended by the GAL and the reasonableness of the fee requested. The parties were advised that if an agreement was not reached, either party could request a hearing as to the amount of the GAL fee to be awarded and the share of the fee that each party was to pay. The case was then taken under advisement. On June 1, 2001, the GAL filed her fee statement with the trial court, copies of which were provided to the parties, requesting $5,081.20. The record indicates that neither party requested a hearing on the issue of the GAL fee to be awarded.

On July 13, 2001, the trial court entered its judgment modifying its prior decree as to custody and child support. In its judgment, the trial court sustained the father's motion to transfer sole legal and physical custody of Robert II to the mother, but overruled the father's motion seeking sole legal and physical custody of Sherri. The mother's cross-motion to change the sole

legal and physical custody of Spencer from the father to her was denied, the court finding that there was not a substantial and continuing change of circumstances warranting such a modification. As to the father's motion to restrict the mother's visitation with Spencer, it was sustained, with the trial court ordering the mother's visitation to be restricted so that Spencer would not be left alone with Robert II while in the mother's custody. In addition, the trial court ordered the father to pay child support to the mother in the amount of $286 per month and awarded the GAL a fee of $5,081.20, $3,556.84 of which was to be paid by the mother. On August 11, 2001, the trial court entered an amended judgment, which contained additional findings with respect to the best interest factors set forth in § 452.375.2.

This appeal follows.

## I.

■ In Point I, the mother claims that "the trial court abused its discretion in limiting [her] time to present her case by failing to prepare [a] pre-trial order." Before addressing the merits of this claim, we first must address the father's contention that the mother's point relied on preserves nothing for our review because it fails to substantially comply with Rule 84.04(d),[2] setting forth the requirements for valid points relied on.

■ Rule 84.04(d) provides:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

  (A) identify the trial court ruling or action that the appellant challenges;

---

**2.** All rule references are to the Missouri Rules of Civil Procedure (2002), unless otherwise   indicated.

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

This " 'rule requires that each point relied on: (1) identify the trial court's ruling or action that the appellant is challenging on appeal; (2) state the legal reasons for the appellant's claim of reversible error; and (3) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.' " *Wilson v. Carnahan*, 25 S.W.3d 664, 666 (Mo.App.2000) (*quoting Hall v. Mo. Bd. of Prob. & Parole*, 10 S.W.3d 540, 543 (Mo. App.1999)). " 'The function of this rule is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review.' " *Id.* "Rule 84.04(d) 'sets forth a form for a point relied on that satisfies the [rule's] requirements.' " *Id.* (*quoting In re Marriage of Wright*, 990 S.W.2d 703, 708 (Mo.App. 1999)).

We will review a point relied on that does not technically comply with the rule as long as we are able to ascertain the issues being raised to some degree of certainty by reading the point relied on in conjunction with the argument thereon and provided that in doing so we are not forced to become an advocate for the appellant. *Stangeland v. Stangeland*, 33 S.W.3d 696, 703 (Mo.App.2000). However, we are not to become an advocate for the appellant by scouring the record and the appellant's argument to determine the basis for the appellant's claim of error on appeal. *Williams v. Williams*, 55 S.W.3d 405, 417–18 (Mo.App.2001).

As to the action of the trial court that the mother is seeking to challenge in this point and the legal reason for why it was reversible error, we have, at best, a blurry picture reading her point relied on in isolation. At first blush, reading her point relied on, that the "trial court abused its discretion in limiting the Appellant's time to present her case by failing to prepare [a] pre-trial order," it would appear that the action she is challenging is the trial court's limiting the time to present her case and that the legal reason for why it was reversible error is that the court failed to include that fact in a pretrial order. In other words, what she appears to be claiming is that she was not able to adequately prepare for trial because she was caught off guard by the trial court's limiting her time to present her case due to a lack of notice of that fact in the trial court's pretrial order. That claim would be borne out by her contention in the second paragraph of her two-paragraph argument of the point that "there was not an opportunity for the Appellant to present all of her witness [*sic*] or her exhibits (Transcript Volume II, pgs 306 lines 19–25) because she had no knowledge that such a limitation would be placed upon the proceeding." That contention, however, seems to be at complete odds with her statement in the first paragraph of her argument that: "During the pretrial conference the Court announced that each litigant would have two and one half hours to present their case." Thus, perhaps the mother simply intended to challenge in this point the limitation on the time for her to present her case. In any event, it matters not

what was intended in that she fails to explain in her point relied on and her argument why, in the context of the case, it was reversible error for the trial court to limit the time for her to present her case, with or without advanced notice of the limitation.

■ Not every trial error is reversible error. *L.J.B. v. L.W.B.*, 921 S.W.2d 23, 27 (Mo.App.1996). In order for trial court error to constitute reversible error, an appellant must show that he or she has been prejudiced as the result of such error. *Id.* Thus, in order to explain why there was reversible error here, the mother had the burden in her point relied on and her argument to advise us of the claimed prejudice that resulted from the trial court's limiting the time in which she could present her case.

There is no mention of the prejudice claimed in the point relied on. As to her argument, as noted, *supra*, the mother does claim that as a result of the time limitation "there was not an opportunity for the Appellant to present all of her witness [*sic*] or her exhibits (Transcript Volume II, pgs 306 lines 19–25)." That cited portion of the transcript reads:

> MS. ALSPAUGH [mother's counsel]: In that regard, Your Honor, and not to be disrespectful, but just for the purpose of the record, I'm expressing my regret and objecting to the fact that we've not had ample opportunity to present our case. Thank you for your time.
>
> THE COURT: Certainly. And since there was no specific offer made, the Court finds that it's only fair to hold the parties to the allocated time. We're at 5:20 and I've been lenient in regard to that time already.

Although not cited by the mother in her brief, immediately preceding the foregoing exchange, the trial court stated:

> THE COURT: Unless counsel has additional evidence that would not be cumulative to that already presented, the Court would have to hold, out of fairness to both sides, counsel to the time allotted. And that means it's been expended.

These portions of the transcript not only demonstrate that the mother has failed to advise us of any prejudice resulting from the complained-of action by the trial court, but that she also failed to advise the trial court of any claimed prejudice. In that regard, the quoted portion of the record makes it clear that she did not make the required offer of proof at trial as to the evidence that she would have presented at trial if given more time, such that even if the mother's point relied on were not wholly defective, she failed to preserve her claim for appellate review in any event. *See Brady v. Brady*, 39 S.W.3d 557, 560–61 (Mo.App.2001) (holding that to properly preserve an objection to the trial court's imposing a time limit for the presentation of evidence, the objecting party must make a specific and definite offer of proof informing the trial court of the evidence that is being excluded by the limitation).

As a result of the substantial deficiencies in the mother's point relied on and argument, we are at a total loss to understand what prejudice she is claiming that she suffered from the trial court's alleged trial error so as to constitute reversible error entitling her to the relief she requests in Point I. Thus, despite the fact that in cases involving the welfare of children, we are more tolerant regarding the requirements of Rule 84.04, *Stangeland*, 33 S.W.3d at 703, where as here the mother has wholly failed to advise us in her point relied on and her argument thereon of what prejudice she suffered from the trial court's

alleged trial error, there is nothing for us to review. *L.J.B.*, 921 S.W.2d at 27.

Point denied.

## II.

In Point II, the mother claims that the trial court erred in overruling her cross-motion to modify its prior custody decree, seeking sole legal and physical custody of Spencer, because in doing so it failed to comply with § 452.375.6 in that it failed to make "specific written findings" in its judgment with respect to the public policy custody considerations found in § 452.375.4 and the best interest factors found in § 452.375.2.[3] The father contends that the trial court was not required to comply with the provisions of § 452.375.6 because it does not come into play in a custody modification proceeding under § 452.410, like the present proceeding, unless the trial court first determines that there has been a substantial change of circumstances justifying a modification, and the trial court here expressly found that there was not a substantial and continuing change of circumstances warranting the modification of Spencer's custody requested by the mother.

The modification of a child custody decree is governed by § 452.410. To modify custody under that section, the movant must prove: (1) that there has been a substantial change in the circumstances of the child or the child's custodian; and (2) that the best interests of the child would be served by modifying custody. *Id.; Love v. Love*, 75 S.W.3d 747, 762 (Mo.App.2002). Thus, unless the trial court finds the requisite substantial change

of circumstances, it never reaches the best interests issue. *Mallett v. Mallett*, 63 S.W.3d 300, 302 (Mo.App.2001); *Brethorst v. Brethorst*, 50 S.W.3d 864, 867 (Mo.App. 2001). Here, the trial court found in its judgment, *inter alia*, that "[t]here has been no showing of a substantial or continuing change of circumstances in this case, which makes it necessary or in Spencer Wood's best interest to transfer his custody."[4] Thus, the court was not required to reach the issue of best interests in denying the mother's cross-motion. That being so, the question then arises as to whether § 452.375.6 was triggered in any event, as the mother contends.

As the issue presented here involves statutory interpretation, a question of law, our review is *de novo*. *Pavlica v. Dir. of Revenue*, 71 S.W.3d 186, 189 (Mo.App. 2002). "In interpreting statutes, we are to ascertain the intent of the legislature." *Id.* (*citing Habjan v. Earnest*, 2 S.W.3d 875, 881 (Mo.App.1999)). In ascertaining the legislature's intent, we are to give the language used its plain and ordinary meaning. *Id.* Where the legislative intent is made evident by giving the language used its plain and ordinary meaning, we are without authority to read into the statute an intent which is contrary thereto. *Id.* " 'When the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied.' " *Id.* (*quoting Habjan*, 2 S.W.3d at 881).

Section 452.375.6 reads:

If the parties have not agreed to a custodial arrangement, or the court de-

---

**3.** Although the mother claimed that the failure of the trial court to make the findings in question was "against the weight of the evidence," it is obvious in reading her argument that what she meant was that such failure was a misapplication of the requirements of § 452.375.6.

**4.** That ruling is not challenged by the mother on appeal.

termines such arrangement is not in the best interest of the child, the court shall include a written finding in the judgment or order based on the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child. If a proposed custodial arrangement is rejected by the court, the court shall include a written finding in the judgment or order detailing the specific relevant factors resulting in the rejection of such arrangement.

Under this section, in cases where there is no custodial arrangement, or in cases where there is such an arrangement, but the court determines that it is not in the best interests of the child, the trial court, in awarding custody, is required to make written findings as to the public policy set forth in § 452.375.4 favoring parents having "frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child," and the best interests factors of § 452.375.2. The appellant contends that § 452.375.6 applies both to initial determinations of custody as well as modifications under § 452.410. In that regard, this court has previously held that the best interests factors of § 452.375.2 do come into play in determining best interests for a modification under § 452.410. *Love,* 75 S.W.3d at 762–63. While our appellate courts have not held that the public policy of § 452.375.4 would apply in any custody proceeding, including modifications, the language of the subsection and logic would dictate that the legislature intended for § 452.375.4, like § 452.375.2, to apply in any custody proceeding.

■ As we note, *supra,* the father does not contend that § 452.375.2 and § 452.375.4 do not apply to modification proceedings under § 452.410. However, he does contend that they only apply in the second, or best interests, step of § 452.410. We would agree. Given the § 452.410 procedure and the language used in § 452.375.2 and § 452.375.4, it is clear that the legislature intended that those subsections were only to come into play when the trial court was determining, in step two of the modification procedure, what custodial arrangement would be in the child's best interests. In other words, the § 452.375.6 findings are not triggered in a modification proceeding unless and until the trial court finds in the first step of the § 452.410 modification proceeding that there has been a substantial change of circumstances warranting modification and then moves to the second step of the procedure to consider whether a modification of the existing custodial arrangement would be appropriate, keeping in mind the public policy found in § 452.375.4 and the child's best interests, based on the factors of § 452.375.2.

In its first amended modification judgment, the trial court expressly found that there had not been a substantial change of circumstances warranting a change of Spencer's custody to the mother. Thus, it was not required to reach the issue of best interests such that § 452.375.6 was not triggered, and the trial court, therefore, did not err in failing to make the findings envisioned by that section, as alleged by the mother.

Point denied.

## III.

■ In Point III, the mother claims that the trial court erred in denying her cross-motion to modify the custody of Spencer because it was against the weight of the evidence in that the court's findings made in support of its judgment denying the mother's cross-motion were not sup-

ported by any evidence in the record. Specifically, she attacks the court's findings in paragraphs 6, 8, 10, 11, 12, and 13 of its amended judgment of August 11, 2001.

As to the trial court's findings in paragraphs 6, 10, and 11, it is obvious that they pertain only to the trial court's rulings with respect to Sherri and/or Robert II and were irrelevant to the court's denial of the mother's cross-motion to modify Spencer's custody. As to the court's findings in paragraphs 8, 12, and 13, they were only relevant to a determination of whether a change of Spencer's custody to the mother was in his best interests. As we discuss in Point II, it is clear from the trial court's judgment that it did not have to reach that issue in denying the mother's cross-motion in that it expressly found that there had not been a substantial change of circumstances warranting the modification sought by the mother, which finding is not challenged on appeal. Of course, this view of the trial court's challenged findings raises the question of why did the court make its best interests findings if it did not reach that issue. The apparent answer to that question is that the disputed findings were made in the event the trial court's determination, that there was no substantial change of circumstances warranting a modification, was successfully challenged on appeal by the mother.

Because the findings of the trial court challenged in this point were not relevant to the unchallenged basis on which the court denied the mother's cross-motion, whether those findings were supported by the evidence or not is of no consequence.

Point denied.

### IV.

■ In Point IV, the mother claims that the trial court erred in awarding GAL fees of $5,081.20 because the award was not supported by substantial evidence in that the GAL's fee statement, on which the trial court's award was based, was not admitted in evidence.[5] Specifically, she claims that inasmuch as the fee statement was filed with the court after the evidence was closed, and no other evidence on the GAL fee was presented, there was no evidence before the court which supported its award of the $5,081.20 GAL fee.

■ The mother's only challenge in this point is that the trial court erred in basing its award of GAL fees on the GAL's fee statement because it was not in evidence. She does not contend that, if the fee statement had been admitted, the evidence was insufficient to support the trial court's award of GAL fees. It is well settled that a trial court's judgment cannot be based upon evidence which was not made a part of the record. *Rice v. State Farm Ins. Co.,* 885 S.W.2d 775, 779 (Mo. App.1994). However, the record here would indicate that the GAL's fee statement was in evidence. Although the record reflects that the statement was not admitted on the day of trial, May 24, 2001, it further reflects that it was admitted at a

---

5. As required by Rule 84.04(a)(4), the mother listed in the "contents" portion of her brief her points relied on, including Point IV challenging the trial court's award of GAL fees. However, in restating Point IV in the "argument" portion of her brief, as required by Rule 84.04(e), the mother actually restated Point V, concerning child support, such that her point relied on and argument in Point IV do not correspond in that the point attacks the court's child support award and the argument attacks its award of GAL fees. While we recognize that we are not to do anything that would give the appearance that we are advocating on behalf of either party, inasmuch as it is obvious what the appellant intended in Point IV, we feel comfortable in reviewing her Point IV as she intended—an attack on the trial court's award of GAL fees.

later date. In that regard, the record indicates that because the GAL was not able on the day of trial to articulate her hours and expenses, the trial court allowed her to submit her fee statement to the court at a later date, with the parties given the opportunity to object and request a hearing on the issue of GAL fees. The record further reflects that the GAL submitted a fee statement to the court on June 1, 2001, with copies to the parties, neither of whom requested a further hearing on the issue of GAL fees. Thus, contrary to the appellant's claim in this point, the fee statement was deemed admitted in evidence such that the trial court was free to consider it in determining its award of the GAL fee.

Point denied.

## V.

In Point V, the mother claims that the trial court erred in its "deviation from the statutory child support guidelines" because the court "failed to make specific relevant findings for deviation from the statutory child support guidelines." We disagree.

In determining an award of child support in any proceeding, § 452.340.8 and Rule 88.01 require the trial court to follow the two-step procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App.1996), which was approved by the Missouri Supreme Court in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997). *Ricklefs v. Ricklefs*, 39 S.W.3d 865, 869–70 (Mo.App.2001). In the first step, the trial court must determine and find for the record the presumed correct child support amount (PCSA) in accordance with Form 14. *Id.* at 870. This required determination and finding can be done by the trial court's either accepting for the record a Form 14 calculation of one of the parties, or in the event the court

"rejects" their Form 14 calculations as being incorrect, by doing its own Form 14 calculation. *Woolridge*, 915 S.W.2d at 381–82. The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record or by articulating on the record how it calculated its Form 14 amount. *Id.* at 382. In the second step, the court, after considering all relevant factors, must determine whether to rebut the PCSA as being unjust or inappropriate. *Ricklefs*, 39 S.W.3d at 870.

Given the above-stated machinations of the *Woolridge* procedure, our review of an award of child support is essentially one of the trial court's application of that procedure, applying the standard enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Hence, in reviewing an award of child support, we review the award, in light of the trial court's application of the *Woolridge* procedure, to determine whether it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Ricklefs*, 39 S.W.3d at 869; *Woolridge*, 915 S.W.2d at 375. After reviewing and determining that the trial court's application of the *Woolridge* procedure passes the *Murphy v. Carron* standard, we then review for an abuse of discretion with respect to the trial court's rebuttal review of its PCSA calculation. *Nelson v. Nelson*, 25 S.W.3d 511, 520 (Mo. App.2000).

Under the mandatory *Woolridge* procedure, the trial court is required to make specific findings for the record with respect to its determination of child support, without a request being made under Rule 73.01(c), in two situations: (1) in step 1 of the procedure, where the court rejects the parties' Form 14s and does not do its own; and (2) in step 2, where it rebuts the PCSA. The record reflects that neither

situation occurred in the instant case. Rather, the record reflects that the trial court accepted the split-custody Form 14s submitted by the father, calculating a PCSA of $286 per month, and that it did not rebut that amount. In that regard, the trial court found:

> The presumed child support amount pursuant to section 452.340.8 R.S.Mo., and Supreme Court Rule 88.01, as calculated by the Form 14 attached hereto as Court's Exhibit A and incorporated herein, is $478.00 from [the father] to [the mother] for the support of Robert II and Sherri. The amount was not rebutted as being unjust and inappropriate. The presumed child support amount pursuant to section 452.340.8 R.S.Mo., and Supreme Court Rule 88.01, as calculated by the Form 14 attached hereto as Court's Exhibit B, is $192.00 per month from [the mother] to [the father] for the support of Spencer. This amount was not rebutted as being unjust and inappropriate. The resulting net amount due from [the father] to [the mother] is $286.00 per month. The Form 14's are attached and incorporated herein.

Hence, the trial court did not err in failing to make findings with respect to the mandatory child support guidelines, as the mother claims in this point.

Point denied.

## VI.

In Point VI, the mother claims that "the trial court erred in determining whether the relationship between the child, Spencer, and his stepmother is superior to the relationship with Spencer and his Mother." The father contends that the mother's point relied on violates Rule 84.04(d)(1)(A), (B), and (C), preserving nothing for our review. We agree.

We would first note that the record does not reflect that the trial court made the "determination" challenged by the mother in this point. That alone would be sufficient for us to deny any appellate relief in this point. More fundamentally, however, is the fact that we are at a total loss as to what the mother is actually challenging in this point as being reversible error. As stated, *supra,* we will review a point relied on that does not technically comply with Rule 84.04(d)(1) as long as we are able to ascertain the issues being raised to some degree of certainty by reading the point relied on in conjunction with the argument thereon and provided that in doing so we are not forced to become an advocate for the appellant. *Stangeland,* 33 S.W.3d at 703. Here, however, even when the point relied on is read in conjunction with the argument, we are left in total wonderment as to the actual ruling of the trial court being challenged, the legal reason or reasons why a ruling of the trial court is reversible error, and why in the context of this case those legal reasons support a claim of reversible error. As such, we would be left to speculate in an attempt to conduct any appellate review in this point, which we cannot do. *Stickley v. Auto Credit, Inc.,* 53 S.W.3d 560, 562 (Mo.App. 2001).

Point dismissed.

### Conclusion

The trial court's judgment modifying its prior decree of child custody and child support and denying the mother's cross-motion for a change of custody of Spencer is affirmed.

ULRICH, P.J., and HARDWICK, J., concur.