**Evelyn CANTWELL, Relator–Appellant,**

v.

**DOUGLAS COUNTY CLERK, Bill Merritt, Douglas County Commissioners J.G. Heinlein, Larry Pueppke, and Jimmy Thompson, Respondents–Respondents.**

No. 22394.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 29, 1999.

Motion for Rehearing and Transfer
Denied Feb. 22, 1999.

Randy R. Cowherd, Newberry, Haden, Cowherd, Bullock & Keck, L.L.C., Springfield, Daniel P. Wade, Ava, for Appellant.

Rich Moore, L.N. Beard, Brill, Moore & Wagoner, P.C., West Plains, for Respondents.

KENNETH W. SHRUM, Presiding Judge.

Evelyn Cantwell (Appellant), Douglas County Public Administrator, filed a mandamus suit against the Douglas County Clerk and three Douglas County Commissioners (Respondents). Appellant sought an order directing Respondents to pay her an annual salary of $14,000 rather than $7,000. Both Appellant and Respondents filed motions for summary judgment. The trial court overruled Appellant's motion and granted Respondents'. We affirm.

## FACTS

On November 2, 1995, the Douglas County Salary Commission (Commission) met pursuant to § 50.333.7, RSMo Supp.1995. The purpose of the meeting was to consider and set salaries for county officers who would be elected in November 1996 and who would begin their terms in 1997. During the meeting, a motion was made and seconded "to set salary percentage at 100%." The Commission carried the motion by a vote of six to three. Immediately thereafter, Appellant moved to increase the public administrator's annual compensation "by $10,000.00, the maximum set by law." When no one seconded Appellant's motion, another Commission member moved to increase the public administrator's annual salary from $4,000 to $7,000. This motion was seconded and then carried by a vote of six to three.

In the 1996 general election, Appellant was elected to another term as public administrator. Her new term began January 1, 1997. The county paid Appellant $7,000 in compensation for 1997. Appellant then filed her mandamus suit seeking to compel Respondents to pay her 100% of the "maximum allowable compensation" for a public administrator, which she argues is $14,000 in this case.

In entering summary judgment for Respondents, the trial judge wrote, "The meaning of the statutes with regard to the public

administrator's compensation is unclear. However, if one takes the two statutes together, trying to give meaning to each, it appears the legislature intended for the compensation of the public administrator to be considered separately by the salary commission." This appeal followed.

## STATUTORY PROVISIONS

Appellant's mandamus suit implicates subsections of two statutes, § 50.333, RSMo Supp.1995, the county salary commission statute, and § 473.739, RSMo 1994, the public administrator compensation statute.[1] In relevant part, § 50.333 provides:

"7. For the year 1989 and every second year thereafter, the salary commission shall meet in every county as many times as it deems necessary ... for the purpose of determining the amount of compensation to be paid to county officials.... The salary commission shall ... consider the compensation to be paid for the next term of office for each county officer to be elected at the next general election.... If the salary commission votes to increase the compensation, all officers or offices whose compensation is being considered by the commission at that time, shall receive the same percentage of the maximum allowable compensation...."

. . . .

"12. The term 'maximum allowable compensation' as used in this section means the highest compensation which may be paid to the specified officer in the particular county based on the salary schedule established by law for the specified officer...."

In pertinent part, § 473.739 RSMo 1994 provides:

"1. Each public administrator ... who does not receive at least twenty-five thousand dollars in fees ... shall receive annual compensation of four thousand dollars and each such public administrator who

does not receive at least twenty-five thousand dollars in fees may request the county salary commission for an increase in annual compensation and the county salary commission may authorize an additional increase in annual compensation not to exceed ten thousand dollars."

## REVIEW OF SUMMARY JUDGMENT

Appellate review of a summary judgment is essentially *de novo* because "[t]he propriety of summary judgment is purely an issue of law." *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376[6] (Mo.banc 1993). An appellate court is not required to defer to a trial court's grant of summary judgment because the determination whether to grant or deny a motion for summary judgment is founded on the record submitted and the law. *Id.* An appellate court views the record in the light most favorable to the party against whom summary judgment was entered. *Id.* at 376[1].

## DISCUSSION AND DECISION

Appellant presents us with a single point relied on. In it, she claims the trial court erred in denying her motion for summary judgment and in granting Respondents' motion

"because [the trial court] failed to properly apply Missouri law and violated Appellants [sic] Due Process and Equal Protection rights in that section 50.333.7 mandates that the salary commission sets the salary of all county officers at the same percentage of their maximum allowable compensation and the trial court specifically found that Appellant's maximum allowable compensation is $14,000.00 under section 473.739, RSMo."

■ As an initial matter, we note that the denial of a motion for summary judgment generally is not appealable. *Jones v. Land-*

---

1. Unless otherwise indicated, all references to § 50.333 are to RSMo Supp.1995 and all other statutory references are to RSMo 1994. In so stating, we note that when Appellant took office on January 1, 1997, § 473.739 RSMo Cum.Supp. 1996 was in effect. However, this appeal concerns Appellant's salary as set by the Commis-

sion on November 2, 1995; consequently, our analysis and discussion focus on § 473.739 RSMo 1994, not § 473.739 RSMo Cum.Supp. 1996. Moreover, we note that because Appellant received less than $25,000 in fees, the 1996 amendment would not have benefitted her.

*mark Leasing, Ltd.*, 957 S.W.2d 369, 373 (Mo.App.1997). This is true even where the trial court denies the motion at the same time it grants an opposing party's motion for summary judgment. *Id.* Consequently, to the extent Appellant's first point complains of and asks us to reverse the denial of her motion for summary judgment, her point is denied.

■ In contrast, a party may appeal from a trial court's grant of summary judgment to a party-opponent. *Gittemeier v. Contractors Roofing & Supply Co.*, 932 S.W.2d 865, 869[2] (Mo.App.1996); *See Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 148 (Mo.App.1993). Accordingly, we consider Appellant's contention that the trial court erred in granting Respondents' motion for summary judgment.

■ Apparently, Appellant and Respondents share the belief that the statutes at issue here are unambiguous and nonconflicting. They argue that the only issue for us to decide is what amount of compensation constitutes "maximum allowable compensation" for public administrators under § 473.739.1. Appellant and Respondents each contend that the statutes clearly and unambiguously support their contradictory legal positions and arguments. We disagree. We find these statutes present a latent ambiguity and are, in fact, conflicting.

Admittedly, §§ 50.333.7, .12, and 473.739.1 do not appear to be patently ambiguous. When we read § 50.333.12 in conjunction with § 473.739.1, however, the phrase "maximum allowable compensation" is rendered ambiguous as applied to the latter provision because the phrase's definition is not compatible with the terms of the public administrator compensation statute.

■ Where a term is defined by statute, we must give effect to the legislature's definition. *Jones v. Dir. of Revenue*, 832 S.W.2d 516, 517[3] (Mo.banc 1992); *Nall v. Highway and Transp. Employees' and Highway Patrol Retirement Sys.*, 943 S.W.2d 708, 711[12] (Mo.App.1997). Section 50.333.12 defines the phrase "maximum allowable compensation" as "the highest compensation which may be paid to [a] specified officer ... *based on the*

*salary schedule established by law* for the specified officer." (Emphasis added.) Unlike other county officer compensation statutes, however, § 473.739.1 does not set out a clearly identifiable "salary schedule." *See, e.g.,* §§ 49.082 (county commissioners); 50.334 (county recorders of deeds); 51.281 (county clerks); 52.269 (county collectors); 53.082 (county assessors); 54.261 (county treasurers); 55.091 (county auditors); 56.265, RSMo Supp.1995 (county prosecuting attorneys); 57.317 (county sheriffs); 58.095 (county coroners). Instead, § 473.739.1 prescribes a minimum level of compensation ($4,000) for public administrators who receive less than $25,000 in fees and, further, permits a county salary commission to authorize "an additional increase in annual compensation not to exceed ten thousand dollars" for such public administrators. Thus, the statute actually establishes an acceptable "range" of compensation for public administrators who receive less than $25,000 in fees. That is, such public administrators are entitled to a minimum $4,000 compensation and *may* receive additional compensation as authorized by statute. By the terms of § 473.739.1, the county salary commission was vested with discretion to set the compensation of a public administrator who receives less than $25,000 in fees within that range. As to whether this "range" constitutes a "salary schedule," people of ordinary intelligence might disagree. *See Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31[4] (Mo.banc 1988); *Nall*, 943 S.W.2d at 711[11]. Thus, the phrase "maximum allowable compensation," as defined by the legislature, is rendered ambiguous when applied to § 473.739.1, and we must resort to statutory construction. *See State ex rel. Hall v. Bauman*, 466 S.W.2d 177, 180 (Mo. App.1971).

■ When construing a statute, we bear in mind several fundamental concepts. First and foremost, our ultimate purpose is to ascertain and give effect to the legislature's intent in enacting the statute, *State ex rel. Riordan v. Dierker*, 956 S.W.2d 258, 260[5] (Mo.banc 1997); *City of Ellisville v. Lohman*, 972 S.W.2d 527, 534[7] (Mo.App. 1998), and, in so doing, we will read statutes in their plain, ordinary, and usual sense,

*Bosworth v. Sewell,* 918 S.W.2d 773, 777[7] (Mo.banc 1996). Where the language of a statute is clear and unambiguous, we will give effect to the language as written and will not resort to statutory construction. *M.A.B. v. Nicely,* 909 S.W.2d 669, 672[4] (Mo.banc 1995); *Hatfield v. McCluney,* 893 S.W.2d 822, 825[3] (Mo.banc 1995). If construction is necessary, we will construe a statute, or a provision thereof, in context. *State ex rel. Lebeau v. Kelly,* 697 S.W.2d 312, 315[6] (Mo.App.1985). In order to shed light on a statute's meaning, appellate courts may consider other statutes that involve similar or related subject matter. *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 200[11] (Mo.banc 1991). Further, "[s]tatutes relating to the same subject are to be considered together and harmonized if possible so as to give meaning to all provisions of each." *Lebeau,* 697 S.W.2d at 315.

■ In construing these statutes, we must ascribe to the word "schedule" its plain and ordinary meaning. *City of Dellwood v. Twyford,* 912 S.W.2d 58, 60[4] (Mo.banc 1995). For our purposes, the plain and ordinary meaning of a word is its dictionary definition. *Id.* In pertinent part, "schedule" is defined by one dictionary as "[a] formal written list of items, usually in tabular form; especially, a listing of rates or prices," THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1160 (1973), and by another as "1 ... b: a statement of supplementary details appended to a legal or legislative document 2: a written or printed list, catalog or inventory," WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1050 (1987). It is clear to us that the range of compensation established for public administrators in § 473.739.1 does not qualify as a "schedule" under these definitions. Accordingly, we conclude that the legislature did not intend for this range, or its applicability or inapplicability—as determined by the amount of fees received—to be treated as a "salary schedule."

We are confirmed in this view by the fact that all other county officer compensation

statutes contain tabular "schedules" that list numerous ranges of possible assessed valuations and/or populations of counties, and next to each such range appears a *fixed* compensation amount.[2] Although the statutes vary somewhat as to the method by which an officer's final compensation amount is calculated, these statutes make it clear that the particular officer's salary—or an amount to be used in the computation thereof—is to be derived from the "schedule" or "schedules" provided. None of these statutes contain "ranges" of "discretionary" compensation like the one established for public administrators in § 473.739.1. Thus, we conclude that the "range" provided by § 473.739.1 does not constitute a "salary schedule" within the meaning of § 50.333.7.

■ The question we are left to decide is whether some figure derived from § 473.739.1 should serve as a public administrator's "maximum allowable compensation" for purposes of § 50.333.7 despite the latent ambiguity presented by these statutes *or* whether a salary commission's determination of a public administrator's compensation under § 473.739.1 is wholly independent of its determination of compensation for other county officers. We must resolve this question with an eye toward ascertaining and effecting the legislature's intent. *Dierker,* 956 S.W.2d at 260[5]; *Lohman,* 972 S.W.2d at 534[7].

Our decision is guided by the fact that the legislature, itself, has made several noteworthy distinctions between the office of public administrator and other county offices. First, as discussed above, § 473.739.1 is the only county officer compensation statute that does not contain a well-delineated "salary schedule" and that vests discretion in the county salary commission to set the officer's compensation within a specified range of acceptable compensation.

Second, we find it significant that § 473.739.1 states that a "public administrator who does not receive at least twenty-five thousand dollars in fees *may request* the

---

2. For those officer compensation statutes that contain both assessed valuation and population tables, the officer's salary is computed by adding together the applicable fixed amount from each

table. *See, e.g.,* § 54.261.2–.4. Thus, such officers' salaries are "fixed," although the fixed amount is derived by looking to two tables rather than one.

county salary commission for an increase in annual compensation." (Emphasis added.) No other county officer compensation statute contains a similar provision. Other county officer compensation statutes simply mandate that those officers' salaries be set in accordance with the applicable salary schedules. The fact that the legislature does not require the salary commission, as a matter of course, to consider authorizing "additional" compensation for a public administrator indicates to us that the statutes should be distinguished.

Finally, we note that, on several occasions, §§ 50.333 and 473.739, as well as the numerous other county officer compensation statutes, have been amended by the same bills passed during the same legislative sessions. We must conclude, therefore, that the legislature is aware of the differences between the various county officer compensation statutes. Nevertheless, it has maintained the differences between the statutes. We believe this evidences the legislature's intent to segregate the determination of compensation for public administrators from the determination of compensation for all other county officers.

We conclude that it is the legislature's intent to distinguish the method of determining the compensation for a public administrator from the method of determining compensation for other county officers. Therefore, we construe § 473.739.1 as creating an independent method for determining compensation for public administrators.

 This interpretation draws §§ 50.333.7 and 473.739.1 into conflict in that § 50.333.7 purports to apply to "*all* [county] officers ... whose compensation is being considered by the commission at that time." (Emphasis added.) When two statutes appear to conflict, we will attempt to reconcile them and give effect to both. *Wells v. Missouri Property Ins. Placement Facility*, 653 S.W.2d 207, 213 (Mo.banc 1983); *Wills v. Wills*, 750 S.W.2d 567, 570 (Mo.App.1988). If the conflict is otherwise irreconcilable, the general statute must yield to the more specific statute. *Greenbriar Hills Country Club v.*

*Dir. of Revenue*, 935 S.W.2d 36, 38[4] (Mo. banc 1996). Based on our construction of the statutes here at issue, the two are irreconcilably conflicting insofar as § 50.333.7 purports to apply the phrase "maximum allowable compensation" to the determination of *all* county officers' compensation. As to determining compensation for a public administrator, § 473.739.1 is more specific than § 50.333.7. Thus, insofar as the two statutes conflict, the provisions of § 473.739.1 prevail with regard to the determination of a public administrator's compensation. Accordingly, to the extent § 50.333.7 speaks of "maximum allowable compensation," its provisions are inapplicable to the commission's determination of compensation for public administrators under § 473.739.1.[3]

We conclude, therefore, that the county was not bound to pay Appellant the same percentage of "maximum allowable compensation" as other county officers. Instead, the county was required to pay Appellant the prescribed minimum compensation of $4,000 plus the $3,000 "additional increase in annual compensation" discretionarily authorized by the Commission pursuant to § 473.739.1. Appellant does not dispute that she has already been compensated $7,000 by the county for her 1997 term. Based on these facts, Respondents were entitled to summary judgment. Thus, we conclude that the trial court's entry of summary judgment for Respondents was not erroneous. Appellant's point is denied.

The judgment is affirmed.

MONTGOMERY, J. and BARNEY, J., Concur.

---

**3.** Insofar as applicable, all other provisions of § 50.333.7 continue to apply to determinations

made under § 473.739.1.