# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

==============
## NO. 03-00-00613-CR
==============

**Nolan Harrell Webb, Appellant**

**v.**

**The State of Texas, Appellee**

==================================================================
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 003612, HONORABLE JON N. WISSER, JUDGE PRESIDING
==================================================================

Appellant Nolan Harrell Webb appeals from his conviction for murder. Tex. Pen. Code Ann. § 19.02(b)(1) (West 1994). After the jury returned a verdict of guilty, the court entered a deadly-weapon finding and assessed punishment at confinement in the Texas Department of Criminal Justice, Institutional Division, for fifty years. In two issues, appellant contends the evidence was factually insufficient to support his conviction and that he was denied effective assistance of counsel. We will affirm the judgment.

### Factual and Procedural Background

Nancy Mendoza awoke on the morning of March 7, 2000, and discovered the body of Gary Goins on the floor in front of her refrigerator, clutching a bottle of milk in one hand. Police and EMS were already at the apartment complex, checking on reports that a man had been seen stumbling around in his underwear, bleeding and clutching his chest, and asking for the police.

Mendonza summoned emergency personnel. Although paramedics detected faint heart activity, Goins died by the time he reached the hospital.

Goins and appellant had become acquainted while they were both incarcerated. Appellant was aware of Goins's HIV-positive status. After appellant's release, he encountered Goins, who invited him back to Goins's apartment. Appellant visited several time over the next three weeks. On at least one occasion, appellant spent the night and shared Goins's bed. Appellant claims that Goins made "romantic" advances to him but he had no sexual contact with Goins and simply explained to Goins that he was not attracted to men.

Tommy Lee Washington roomed with Goins. On the evening of March 6, 2000, appellant visited Goins's apartment. When he arrived, Goins and Washington were engaged in a heated discussion in which Goins accused Washington's friends of stealing from him. Ultimately, Goins told Washington that he was going to kick Washington out so that appellant could move in. Another friend of Goins, Teresa Strange, arrived about 10:30 or 11:00 p.m. The three men had been drinking vodka. Strange testified that Goins was belligerent when she arrived and was making remarks about how attractive he found appellant. Goins insisted that Washington leave right away, which he did, sometime between 2:30 and 4:30 a.m. Strange then left. At some point after that, appellant stabbed Goins, who then staggered out of the apartment in his underwear, told several people to call the police, then entered Mendoza's apartment and collapsed in front of her refrigerator.

While Goins was staggering around, appellant left the apartment and walked to a local convenience store that was Washington's usual hangout. Appellant told Washington that he and Goins had been in a fight. He showed Washington the bloody knife and said that he did not know whether Goins was dead. Washington noticed a "scar" or "scratch" under one of appellant's eyes.

2

Appellant then purchased a beer and walked to a nearby wooded area. He tried to wash some of the blood off his chest, jacket, and pants; he then sat on a couch in the woods where Officer David Erskin found him after interviewing Washington.

Appellant voluntarily agreed to accompany investigators. Officer Erskin frisked appellant's jacket and found the knife. As they were walking up the path, appellant told Erskin he knew what this was about. Erskin replied that he was not an investigator so appellant should not talk to him. Appellant was interviewed and arrested at the police station.

Appellant testified at trial. Appellant said that after Washington and Strange left, he took off his shoes and shirt and went to sleep on the couch. He awoke during the night to find his pants removed and Goins standing over him. Appellant asked Goins what he was doing and Goins said, "I'm going to rape you and then I'm going to kill you." Appellant kicked Goins hard enough to knock him away from the sofa; Goins rushed back and they struggled on the sofa; Goins attempted to bite him. Appellant managed to put his pants back on; Goins said, "I can't rape you like this." Goins ran into the kitchen; appellant was concerned Goins was going to get a knife. The only way out of the apartment was through the kitchen. Appellant, with his own knife in hand, went into the kitchen and found Goins with his hand in a drawer.[1] Appellant asked Goins to step aside and let him leave; Goins refused and grabbed appellant's hand that was holding the knife. They struggled, Goins's hand slipped, and the knife plunged into his own chest. Appellant removed the knife and they

---

[1] Appellant said that he was employed on the shipping and receiving dock of a warehouse. His supervisor gave him a knife to open boxes and told him to keep it with him so that employees on other shifts would not take it.

3

both stood there until Goins started to bleed. Goins left the apartment. Appellant got his jacket and left.

On cross-examination, the prosecutor questioned appellant about why he had not told this story to the police at his initial interview. When appellant answered that he had told them part of the story, the prosecutor said that he had told them nothing and started to say, "If I told you that I watched a videotape of you sitting in the Austin Police Department . . . ." At that point, defense counsel objected that the prosecutor had not laid the foundation for impeachment with a prior inconsistent statement, which objection was sustained.[2] The prosecutor then pointed out that appellant claimed he put his coat on with blood all over his chest but the only blood found was on the outside of the coat, not the inside. Appellant claimed that he forcefully kicked Goins, yet the medical examiner found no bruises. She also questioned him about prior convictions.

At trial, Dr. Robert Bayardo, the chief medical examiner for Travis County, testified that the knife strike was a forceful blow. The wound was three and one-half inches deep, traversed the left lung, and perforated both of the main chambers of Goins's heart. He said the wound was not characteristic of ones received in a struggle; it was too clean. He explained that in a struggle, there is normally a twisting motion that leaves additional cuts, either on the way in or on the way out. Additionally, if the victim had been struggling, he would expect to see bruises, scrapes, or other defensive wounds. However, the victim had no defensive wounds. From the angle and force of the

---

[2] No further relief was requested. The prosecutor later testified at the hearing on motion for new trial, that she had intended the question to be hypothetical.

blow he testified that, in his opinion, the appellant struck Goins with a right-handed blow almost from chest to chest.[3]

**Discussion**

*Factual Sufficiency*

In a factual sufficiency review, we begin with the presumption that the evidence supporting the judgment is legally sufficient. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In reviewing the factual sufficiency of the evidence, we examine all the evidence in a neutral light. *Id.* at 129. Evidence is factually insufficient if it is so weak as to render the verdict clearly wrong and manifestly unjust or the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also Clewis*, 922 S.W.2d at 131-32. In reviewing the factual sufficiency of the evidence, the appellate court asks two questions: (1) does a neutral review of all of the evidence reveal that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or, (2) does a neutral review of all of the evidence reveal that the proof of guilt is greatly outweighed by contrary proof? *Johnson*, 23 S.W.3d at 11. In either situation, an appellate court should overturn a jury's verdict only when the record clearly indicates that such a step is necessary to avoid a manifest injustice. *Id.* at 9.

The jury decides the credibility of the witnesses and the weight to be given their testimony, and it resolves or reconciles conflicts in the testimony, accepting or rejecting such portions

---

[3] According to the record, Dr. Bayardo simulated the knife blow using the prosecuting attorney as the model.

as it sees fit. *Banks v. State*, 510 S.W.2d 592, 595 (Tex. Crim. App. 1974). A jury can accept or reject either the State's or the accused's version of the facts. *Moore v. State*, 804 S.W.2d 165, 166 (Tex. App.—Houston [14th Dist.] 1991, no pet.). When a jury's determination depends primarily on its evaluation of credibility and demeanor, it deserves almost total deference. *Johnson, 23* S.W.2d at 8-9; *Cain*, 953 S.W.2d at 408-09.

Appellant presented evidence of self-defense at trial. Tex. Pen. Code Ann. § 9.32 (West Supp. 2001). The State does not have to present direct evidence to refute self-defense; rather, the State must prove its case beyond a reasonable doubt. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). A sufficiency review considers the sufficiency of the evidence to establish all of the essential elements of the offense, including the jury's implied rejection of the self-defense theory. *Montemayor v. State*, 03-99-673-CR, 2001 Tex. App. LEXIS 4373, *11 (Tex. App.—Austin June 29, 2001, pet. ref'd); *Reaves v. State*, 970 S.W.2d 111, 115 (Tex. App.—Dallas 1998, no pet.).

In this case, the jury's evaluation of credibility and demeanor was crucial to its verdict. The defendant and the deceased were the only eyewitnesses to the murder. The State presented physical evidence inconsistent with appellant's self-defense theory. The jury could have believed that appellant's defense was credible given his testimony about Goins's sexual overtures, Strange's testimony about Goins's suggestive comments concerning appellant, and testimony that Goins was belligerent and drunk on the night of the murder. However, the jury was free to disbelieve the defendant's testimony and believe the State's. *See Reaves v. State*, 970 S.W.2d at 117-18 (defendant and parents only eyewitnesses to killing; their testimony consistent with self-defense, but jury free to believe State's version supported by medical evidence and 911 call); *see also Saxton v. State*, 804

S.W.2d at 914 (defensive evidence merely consistent with physical evidence at scene will not render State's evidence legally insufficient because credibility determination of such evidence is solely province of jury).

After neutral consideration of all of the evidence, and after giving proper deference to the jury's verdict, including its implied rejection of the self-defense issue, we conclude that the evidence of appellant's guilt is not so weak as to undermine confidence in the jury's determination, nor is the proof of guilt, although adequate if taken alone, greatly outweighed by contrary proof. The evidence, including the evidence supporting the jury's implied rejection of appellant's self-defense claim, is factually sufficient to support the jury's verdict of murder. We overrule appellant's first issue.

### *Ineffective Assistance*

In his second point of error, appellant claims ineffective assistance of counsel. To prevail in an ineffective assistance of counsel claim, a defendant must prove by a preponderance of the evidence (1) that his counsel's performance was deficient and (2) that the deficiency prejudiced his defense. *Strickland v. Washington*, 446 U.S. 668, 689 (1984); *Hernandez v. State*, 988 S.W.2d 53, 53 (Tex. Crim. App. 1986). In meeting the first prong of the test, the defendant must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 446 U.S. at 689. He must identify the acts of omissions of counsel that are not the result of reasonable professional judgment. *Id.* at 690. He then must show, in light of all the circumstances, that the identified acts or omissions were outside the wide range of professionally

7

competent assistance. *Id.* To meet the second prong of the test, the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

The trial court held a hearing on appellant's motion for new trial at which his complaint was developed. One complaint about ineffective assistance centers around a videotape of an interview at the police station.[4]

Defense counsel and the prosecutor had an informal open-file discovery agreement in which counsel was allowed to view the State's entire case file. Defense counsel filed no pre-trial motions other than a *Brady* motion and a motion in limine concerning extraneous offenses. The videotape was of an interview made during appellant's initial interview at the police department. The existence of the videotape was noted in the report that summarized the defendant's statements. Defense counsel said he had asked about the tape; the prosecutor did not remember his asking about the tape and had no notation in her file. Neither defense counsel nor the prosecutor viewed the videotape before the hearing on the motion for new trial. Defense counsel claimed he was ineffective in not filing a formal discovery motion that might have resulted in the pre-trial production of the videotape.

Counsel for appellant said that both the offense report and the videotape were consistent with appellant's testimony but that the videotape had more detail. However, when asked

---

[4] Appellant does not complain that the State failed to comply with his motion to disclose exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

whether he would have offered the videotape as a prior consistent statement to rebut the implied charge of recent fabrication made on cross-examination, he replied that he probably would not have unless he could have had certain statements, such as "I have no remorse," excised. Neither did counsel introduce any of the written police report.

Counsel also claimed that he was ineffective because he failed to ask the court to appoint an investigator. However, he said that after interviewing appellant, he had been satisfied that appellant, Strange, and Washington were the only people with personal knowledge of the evening's events. Strange was a defense witness. Washington had given a statement adverse to appellant and there was no reasonable expectation that he would change his story. Counsel obtained information about Washington from the pre-trial services department, which he used to impeach Washington.

Even if appellant could meet the first prong of *Strickland*, he cannot establish the second prong; that, but for counsel's errors, there was a reasonable probability that the result of the proceeding would have been different. Appellant's self-defense theory presented at trial was inconsistent with portions of the State's evidence. The videotape contained a statement about a lack of remorse that could have been interpreted as incriminating. Appellant has not demonstrated that his pre-trial receipt and viewing of the videotape would have made a difference in the outcome of the trial. Neither has be demonstrated how the assistance of an investigator, when all relevant witnesses had been identified and were available to testify, would have affected the outcome. Accordingly, we overrule appellant's second issue.

## Conclusion

We have overruled appellant's two issues concerning factual sufficiency and ineffective assistance of counsel. Accordingly, we affirm appellant's conviction.

_____

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:   November 29, 2001

Do Not Publish