STATE of Missouri ex rel. Kenneth L. PATE, Relator/Respondent,

v.

Madison County Presiding Commissioner Robert MOONEY, Commissioner Don Myers, Commissioner Terry Hovis, and Treasurer Kay Rehkop, Respondents/Appellants.

No. ED 79816.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Aug. 20, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 22, 2002.

Application for Transfer Denied
Nov. 26, 2002.

M. Dwight Robbins, Fredericktown, MO, for appellant.

Morry S. Cole, St. Louis, MO, for respondents.

MARY R. RUSSELL, Judge.

Madison County Presiding Commissioner Robert Mooney, Commissioner Don Myers, Commissioner Terry Hovis, and Treasurer Kay Rehkop (collectively "County") appeal from a judgment of the Circuit Court of Madison County in favor of Madison County Public Administrator Kenneth L. Pate ("Public Administrator"). County alleges the trial court erred in finding that Public Administrator had "duly and timely" requested increased compensation for his work in 1997 and 1998. We agree with County and reverse.

The Madison County Salary Commission ("Salary Commission") met in October 1995, to set salaries for county officials, including the public administrator, whose terms would begin in January 1997.[1]

---

1. Pursuant to section 50.333 RSMo (Supp. 1995), a county salary commission is comprised of all county officials and meets on alternate years to set the salaries of those county officials who will begin terms of office after the next election. The salaries set by the salary commission take effect at the commencement of the new term of office. For example, the 1995 Salary Commission determined county officials' salaries for terms be-

Acting in accordance with section 50.333 RSMo (Supp.1995), the 1995 Salary Commission voted to set the salaries of all county officials at 85 percent of the maximum salary they could receive under their respective salary schedules. The 1995 Salary Commission set the salaries in this way pursuant to the section 50.333 RSMo (Supp.1995) provision that stated if a county salary commission voted to increase the compensation of a county official, it must pay all other officials whose salaries were being considered the same percentage of their "maximum allowable compensation." [2]

The 1995 Salary Commission then voted to set the public administrator's salary at $6,000. Public Administrator, who took office in 1997, testified at trial that the 1995 Salary Commission set his salary at $6,000 because it misinterpreted section 473.739 RSMo 1994.

Section 473.739 RSMo 1994, in relevant part, stated:

1. Each public administrator, except in counties of the first class with a charter form of government, who does not receive at least twenty-five thousand dollars in fees as otherwise allowed by law shall receive annual compensation of four thousand dollars and each such public administrator who does not receive at least twenty-five thousand dollars in fees may request the county salary commission for an increase in annual compensation and the county salary commission may authorize an additional increase in annual compensation not to exceed ten thousand dollars.

2. Two thousand dollars of the compensation authorized in this section shall be payable to the public administrator only if he has completed at least twenty hours of classroom instruction each calendar year relating to the operations of the public administrator's office when approved by a professional association of the county public administrators of Missouri unless exempted from the training by the professional association. . . .

According to Public Administrator, the 1995 Salary Commission interpreted section 473.739 RSMo 1994 as requiring it to pay him a $4,000 salary, plus an additional $2,000 if he completed 20 hours of professional coursework, which he had done.[3]

In 1997 and 1998, County paid Public Administrator an annual salary of $5,100, or 85 percent of the $6,000 salary approved by the 1995 Salary Commission. Public Administrator asserted that $5,100 was an improper salary amount, and maintained that he should have received an annual salary of $11,900, which represented 85 percent of the $14,000 maximum salary

ginning in January 1997. Likewise, the 1997 Salary Commission determined the salaries of those officials whose terms began in January 1999, and the 1999 Salary Commission set the salaries of officials beginning terms in January 2001.

2. The term "maximum allowable compensation," as used in section 50.333 RSMo (Supp. 1995), "means the highest compensation which may be paid to the specified officer in the particular county based on the salary schedule established by law for the specified officer. . . ."

3. While there are no other explanations given as to where the $6,000 figure was derived, it is likely this was the reasoning the Salary Commission used in determining Public Administrator's maximum allowable salary at its 1995 meeting. We note, however, that figure was incorrect under section 473.739 RSMo 1994. That section indicates that $2,000 of the public administrator's $4,000 salary is paid only if the public administrator completes professional coursework. The statute does not offer any additional compensation greater than $4,000 for completion of those classes.

available to him under section 473.739 RSMo 1994. The $14,000 maximum salary figure represents the $4,000 salary that is guaranteed to a public administrator who does not collect at least $25,000 in fees annually under section 473.739.1 RSMo 1994, plus the $10,000 additional compensation that a public administrator can request from his county salary commission. Public Administrator maintained he was entitled to an $11,900 salary because the 1995 Salary Commission had agreed to pay all county officials 85 percent of their maximum allowable salary.

After he took office, Public Administrator met with the prosecuting attorney and the county commissioners several times to discuss proper compensation for his position. Public Administrator's attorney sent the county commissioners a letter on November 20, 1997, asserting that County was not paying Public Administrator his proper salary according to the 1995 Salary Commission's actions and under Missouri law. The letter indicated that section 473.739 RSMo 1994 set the maximum allowable compensation for public administrators at $14,000. The letter reasoned that pursuant to the 1995 motion to pay all county officials 85 percent of their maximum allowable salaries, Public Administrator should receive an annual salary of $11,900. The letter indicated that Public Administrator wanted the $11,900 salary to be retroactive to the start of his term in January 1997. County took no action.

Public Administrator filed a writ in the Madison County Circuit Court seeking increased salary in August 1998. He alleged that, pursuant to the statutory directives of sections 50.333 RSMo (Supp.1995) and 473.739 RSMo 1994,[4] the Salary Commission had improperly established his salary at its 1995 meeting and that he was underpaid for his work in 1997 and 1998. Public Administrator sought a court order forcing County to pay him an $11,900 salary for 1997 and 1998 and an order prohibiting County from following the 1995 Salary Commission's decision to pay him only 85 percent of $6,000.

County filed a motion to dismiss in which it argued that section 473.739.1 set Public Administrator's salary at only $4,000. County argued that if section 50.333 required all county officials' salaries to be set at the same percentage of their maximum allowable compensation, then Public Administrator was entitled to no more than 85 percent of $4,000.

County further stated that Public Administrator had not offered proof that he had completed the required classes under section 473.739.2. County also asserted that Public Administrator had not requested the $10,000 maximum additional compensation authorized by section 473.739.1 from the 1995 Salary Commission and, therefore, was not entitled to it. Additionally, County argued that Public Administrator had handled only three new cases and four existing cases since assuming office in January 1997, and an $11,900 salary was excessive for such a small caseload.

Public Administrator responded by arguing that he had "demanded his lawful salary on several occasions, including [at]

---

4. The changes made to sections 50.333 RSMo (Supp.1995) and 473.739 RSMo 1994 during the years at issue in this case did not materially impact Public Administrator's claim. Section 473.739 RSMo 1994 was amended in 1996 to allow public administrators who do not collect more than $45,000 in fees, as opposed to the former provision of $25,000 in

fees, to request up to $10,000 in additional compensation. Because no changes have been made to these statutes that would materially impact Public Administrator's claim, all further references to sections 473.739 and 50.333 will be to RSMo 2000, unless otherwise indicated.

the October 1997 Salary Commission meeting," and that his caseload was irrelevant to his claim for additional compensation. The court denied County's motion to dismiss and a hearing on Public Administrator's case was held on March 22, 1999.

At trial, Public Administrator argued that the section 50.333 requirement that all county officials receive an equal percentage of their maximum allowable salary could be read in harmony with section 473.739.1 regarding public administrators' salaries. He suggested that the same percentage of the maximum allowable compensation requirement from section 50.333 should control any contrary provision in section 473.739 because section 50.333 was passed after section 473.739. He also asserted that any attempt to pay him less than 85 percent of his maximum allowable salary would be an unlawful attempt to treat him differently from other county officials.

County responded that the 1995 Salary Commission had correctly used section 473.739, rather than section 50.333, to set Public Administrator's salary. County maintained that section 50.333 requires the maximum allowable salary to be established pursuant to the statutory "salary schedule" for each office and that section 473.739 does not contain such a "salary schedule" for public administrators, rather it guarantees a $4,000 salary and allows a public administrator to request additional compensation to a maximum of $10,000. County argued that any remedy for Public Administrator was through legislative action and not through the judiciary.

The trial court issued its original judgment on June 2, 1999, finding the 1995 Salary Commission intended to "set [Public Administrator's] salary at $6,000 and to set compensation at 85 [percent] thereof." The court found that section 473.739 "does not provide a schedule as to salary beyond

$4,000 and authorizes, but does not mandate, additional salary not to exceed $10,000.00." Because the court found such an increase to be strictly permissive, it held the Salary Commission could set Public Administrator's salary "within the range of $4,000 to $14,000," and thus found $5,100 was an acceptable annual salary for Public Administrator.

### PUBLIC ADMINISTRATOR FILED APPEAL: PATE I

Public Administrator subsequently filed an appeal with this court. *Pate v. Madison County Presiding Comm'r Robert Mooney* ("*Pate I*"), 22 S.W.3d 766, 767 (Mo.App. 2000). Public Administrator alleged that the trial court erred in denying his petition because the Salary Commission had improperly compensated him pursuant to sections 50.333 and 473.739 by singling him out for a salary reduction and paying him an unequal percentage of his maximum salary as compared to other county officials. *Pate I*, 22 S.W.3d at 768.

In *Pate I*, we held that section 50.333 did not apply to the salaries of public administrators, which are instead independently controlled by section 473.739. *Pate I*, 22 S.W.3d at 769–70. We held that section 473.739 controls over section 50.333 because it is the more specific of the two statutes. *Pate I*, 22 S.W.3d at 769. Our decision in *Pate I* followed the Western District's interpretation of sections 50.333 and 473.739 in *Habjan v. Earnest*, 2 S.W.3d 875 (Mo.App.1999). *Pate I*, 22 S.W.3d at 769–70.

In *Habjan*, the Western District held that sections 50.333 and 473.739 conflicted as to how the public administrator's salary should be properly calculated, and it concluded that the "maximum allowable compensation" provision in section 50.533.7 did not apply to public administrators' salaries. *Habjan*, 2 S.W.3d at 883. *Habjan* found

that "[s]ection 473.739.1 creat[ed] an independent method for determining the amount of annual compensation to be paid to public administrators." *Habjan*, 2 S.W.3d at 884.

We explained in *Pate I* that section 473.739.1 determines the proper annual salary for public administrators by classifying them according to the amount of fees they collect each year. *Pate I*, 22 S.W.3d at 769 (*citing Habjan*, 2 S.W.3d at 883). Public administrators who receive less than $25,000 in fees annually "shall receive annual compensation of [$4,000]." Section 473.739.1 RSMo 1994; *Pate I*, 22 S.W.3d at 769. Additionally, public administrators receiving less than $25,000 in fees annually "may request the county salary commission for an increase in annual compensation and the county salary commission may authorize an additional increase in annual compensation not to exceed ten thousand dollars." Section 473.739.1 RSMo 1994; *see Pate I*, 22 S.W.3d at 769.

We noted in *Pate I* that nothing in section 473.739.1 details the method by which public administrators must request the additional salary, and nothing in the section indicates when such a request must be made. *Pate I*, 22 S.W.3d at 769. We held, however, that because the additional salary is contingent on the amount of fees the public administrator collects each year, the request for additional salary "must be made by the public administrator after completion of the calendar year or years" for which he seeks increased compensation. *Id.* We further stated that the request should be made at the "next regularly scheduled meeting" of the salary

commission as established by section 50.333.7. *Pate I*, 22 S.W.3d at 769. Additionally, although section 50.333.7 requires a salary commission to establish salaries for the "next term of office," we held that provision does not apply to a salary commission's consideration of a public administrator's request for additional compensation under section 473.739.1. *Pate I*, 22 S.W.3d at 769.

In *Pate I*, we reversed the trial court's judgment and remanded the case to the trial court with instructions that it review the 1999 Salary Commission minutes to determine whether Public Administrator had appropriately and timely requested additional back salary pursuant to section 473.739 and our holding on appeal. *Pate I*, 22 S.W.3d at 770. While we found that Public Administrator had met with the county commissioners and the prosecuting attorney a couple of times and that he had sent a letter requesting additional salary, the record on appeal did not indicate when he made his requests for increased salary, for what years those requests were made, and whether the 1999 Salary Commission considered his requests.[5] *Id.*

### TRIAL COURT CONDUCTED REMAND

■ Upon remand, the trial court reviewed the 1999 Salary Commission minutes and also considered evidence that included: our decision in *Pate I*; the 1997 letter from Public Administrator's attorney to the county commissioners; the transcript of the original hearing on the claim, which was held on March 22, 1999;[6] and a

---

5. The 1999 minutes were not included in the record on appeal in *Pate I* because the 1999 Salary Commission meeting was held on September 10, 1999. This was after the trial court's original judgment, which was issued on June 2, 1999, but prior to *Pate I*, which was issued on July 25, 2000.

6. Read in light of our opinion in *Pate I*, Public Administrator's 1997 letter requesting additional salary has no impact on the trial court's determination of whether Public Administrator timely requested additional compensation for 1997 and 1998 pursuant to section 473.739. Similarly, Public Administrator's

copy of Senate Bill 542, which changed the compensation for public administrators as of August 28, 2000.[7]

The 1999 Salary Commission met on September 10, 1999. In relevant part, the 1999 Salary Commission minutes[8] reviewed by the trial court on remand state: "[T]he Salary Commission meeting was called, for the purpose of determining the compensation, to be paid to the office holders, of Madison County, [including the public administrator,] whose salaries are set by said Commission, beginning January 1, 2001." The 1999 Salary Commission set the salaries of the sheriff, the coroner, and the associate commissioners at 85 percent of their maximum allowable compensation for the term of office beginning in January 2001.

When the chairman "opened the floor for discussion on the Public Administrators (sic) salary," Public Administrator "stated [his] office needs to be treated the same as other offices." He also "stated [that] the Public Administrator can request addition-al salary and the Salary Commission may authorize an additional increase in salary."

Public Administrator then "requested [his] salary be raised to [$14,000], and then reduced to 85 [percent]," and "[t]here was further discussion on the law suit (sic) pending regarding the Public Administrators (sic) salary." According to the minutes, "[a]fter discussion, [the Salary Commission voted] to raise the Public Administrators (sic) salary to [$14,000] and then reduce to 85 [percent]."

A salary table attached to the 1999 Salary Commission minutes indicates the "authorized salary" each county official could earn and then reduces that salary to 85 percent of the authorized figure in order to determine each official's salary for the term beginning January 2001. For the public administrator taking office in 2001, the table reflects an authorized salary of $14,000, followed by a salary of $11,900, labeled "85 [percent] Authorized Salary."

After considering this evidence, the trial court entered judgment in favor of Public Administrator, stating that Public Admin-

---

trial testimony from the 1998 hearing should not be considered as a proper section 473.739 request. Both the 1997 letter and the 1998 testimony were issued prior to the conclusion of the calendar years for which Public Administrator sought increased salary and prior to the 1999 Salary Commission meeting at which that additional salary could have been approved. Further, the 1997 letter incorrectly argued that Public Administrator was entitled to $11,900 because County was required to pay him in compliance with the directives of section 50.333, which could not be construed as a request for additional salary pursuant to section 473.739.1. Likewise, Public Administrator's trial testimony also advocated that he was entitled to a salary increase based on the mandates of section 50.333.

Although the 1997 letter and the 1998 trial testimony were used as evidence on remand, "erroneously admitted evidence ... is rarely, if ever, a cause for reversal [in a court-tried case] and then only when it appears from the record that the court relied on the inadmissible evidence in arriving at its findings." *Mul-*

*lenix St. Charles Props., L.P. v. City of St. Charles*, 983 S.W.2d 550, 557 (Mo.App.1998) (citing *Washington Univ. v. Royal Crown Bottling*, 801 S.W.2d 458, 470 (Mo.App.1990)). In a judge-tried case, we presume that the trial court disregards all irrelevant evidence. *Id.* (citing *N.K.M. v. L.E.M.*, 606 S.W.2d 179, 187 (Mo.App.1980)). As such, we assume that the trial court reached its conclusion on remand based on our decision in *Pate I* and only on relevant evidence, including the minutes of the 1999 Salary Commission meeting.

7. While this bill does impact the determination of public administrators' salaries after August 28, 2000, this bill is not relevant to the issues in the instant case regarding Public Administrator's salary for 1997 and 1998.

8. Because no hearing was held on remand, the only information we have about the 1999 Salary Commission meeting are the meeting minutes.

istrator had been insufficiently compensated by County because he had "duly and timely" requested additional compensation for 1997 and 1998. The court ordered County to increase Public Administrator's salary for 1997 and 1998 to $11,900 and ordered County not to follow the 1995 Salary Commission motion to pay Public Administrator only 85 percent of $6,000, or $5,100, for those years.

## COUNTY FILES APPEAL

County now appeals and alleges the trial court erred in finding Public Administrator had properly and timely requested additional compensation for 1997 and 1998.

■ In a court-tried case, we affirm the judgment of the trial court so long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We examine the evidence in the light most favorable to the trial court's decision. *Gesellschaft Fur Geratebau v. GFG Am. Gas Det.*, 967 S.W.2d 144, 146 (Mo.App.1998). This court independently evaluates the trial court's conclusions of law, accepting evidence and inferences favorable to the respondent and disregarding any contrary evidence. *Devine v. Gateway Ins. Co.*, 60 S.W.3d 6, 8–9 (Mo.App.2001) (citation omitted).

Under our standard of review, we examine whether there was sufficient evidence from which the court could determine that Public Administrator was entitled to additional salary for 1997 and 1998. *See Pate I*, 22 S.W.3d at 767, 770; *see also Murphy*, 536 S.W.2d at 32. We also consider whether the trial court correctly applied sections 50.333 and 473.739 and our previous holding in *Pate I* to Public Administra-

tor's case on remand. *See Murphy*, 536 S.W.2d at 32.

■ Because the Madison County public administrator did not collect more than $25,000 in fees annually, pursuant to section 473.739.1 RSMo 1994, the 1995 Salary Commission should have set the public administrator's salary for the term beginning January 1997 at $4,000 per year. Public Administrator would have received that $4,000 salary for each year of his term beginning in January 1997, and then he could have requested a maximum of $10,000 in additional salary for each completed year of his term that he did not collect more than $45,000 in fees.[9] His request would then have been considered for approval at the next scheduled meeting of the Salary Commission, which was held in September 1999.

The language of section 473.739.1 indicates that the grant of additional salary is strictly permissive. In relevant part, section 473.739.1 states that "the county salary commission may authorize an additional increase in annual compensation not to exceed ten thousand dollars" for each year the public administrator makes a proper request under the statute. Section 473.739.1; *see Cantwell v. Douglas County Clerk*, 988 S.W.2d 51, 54 (Mo.App.1999) (stating "public administrators are entitled to a minimum $4,000 compensation and *may* receive additional compensation" at the discretion of the county salary commission).

■ The evidence considered by the trial court on remand does not clearly indicate that Public Administrator made a request for retroactive additional compensation pursuant to section 473.739.1 at the 1999 Salary Commission meeting. Even if the 1999 Salary Commission knew of

**9.** *See supra* note 4 discussing changes to section 473.739 RSMo 1994.

Public Administrator's previous requests for additional salary made in conversation, letter, or writ petition, the record does not indicate that the commission considered or acted upon those prior requests.

We note that the 1999 Salary Commission met on September 10, 1999, and, therefore, it could not have considered the Western District's holding in *Habjan*, issued on October 5, 1999, or our holding in *Pate I*, issued on July 25, 2000, in determining Public Administrator's salary. The reasoning of *Habjan* and *Pate I*, however, was derived from the Southern District's holding in *Cantwell*, issued on January 29, 1999. The *Cantwell* court initially found that the section 50.333.7 "same percentage" requirement does not apply to setting public administrators' salaries, and that public administrators' salaries should be set in accordance with section 473.739. *Cantwell*, 988 S.W.2d at 55–56. As such, the Salary Commission and Public Administrator should have known at the 1999 meeting, based on the decision in *Cantwell*, that Public Administrator's salary should have been set pursuant to section 473.739 and without regard to the requirements of section 50.333.[10]

Our holding in *Pate I* clearly indicated that the "same percentage" requirement of section 50.333 did not apply to public administrators' salaries, and it indicated the method by which Public Administrator should have requested additional compensation under section 473.739.

The 1999 Salary Commission minutes and the salary table attached to them, however, suggest that the Salary Commission and Public Administrator continued to operate under the assumption that section 50.333 applied to Public Administrator's salary.

Read in the light most favorable to the trial court's judgment, the minutes of the 1999 Salary Commission give no indication that Public Administrator requested it to pay him additional salary for 1997 and 1998. Even if we were to consider Public Administrator's numerous prior demands for an $11,900 salary as a request under consideration at the 1999 Salary Commission meeting, there is not sufficient evidence to justify a finding that the commission approved any retroactive salary increases for Public Administrator.

The 1999 meeting minutes state that the 1999 Salary Commission met for the purpose of determining the salaries for county officials beginning terms in January 2001. Read in context, the 1999 minutes suggest that in raising the public administrator's salary to $11,900, the 1999 Salary Commission was setting the salary for the public administrator whose term would begin in January 2001. Because Public Administrator had never collected more than $25,000, the 1999 Salary Commission should have set the public administrator's annual salary for the term beginning in 2001 at $4,000, with the understanding that the public administrator could later request retroactive additional compensation of not more than $10,000 for those completed years of his term that he did not collect at least $45,000 in fees. There is no indication in the minutes that the commis-

---

**10.** In *Cantwell*, the court stated that section 473.739.1 "creat[es] an independent method for determining compensation for public administrators." *Cantwell*, 988 S.W.2d at 56. *Cantwell* was issued prior to the hearing on Public Administrator's original petition held on March 22, 1999, and prior to the trial court's original judgment rendered on June 2, 1999. Accordingly, both sides should have been aware at that time that section 473.739.1 created an independent method for determining Public Administrator's salary and that the "same percentage" of maximum allowable salary directive of section 50.333 did not apply to him.

sion's discussion shifted to consideration of retroactive compensation for Public Administrator.

Because the Southern District's decision in *Cantwell* was the only case on point regarding setting public administrators' salaries under section 473.739.1 when the Salary Commission met in September 1999, it should have considered the holding in *Cantwell* as persuasive authority finding that section 473.739.1 controlled over section 50.333 in setting public administrators' salaries. If Public Administrator had requested retroactive additional compensation at the 1999 Salary Commission meeting, he should have indicated that he was requesting additional salary as provided in section 473.739.1 because he did not collect $45,000 in fees in 1997 and 1998. In approving Public Administrator's request, the Salary Commission would have been bound by the directives of section 473.739, and it would not have been required to pay him in relation to the salaries of other county officials as suggested by section 50.333. *See Cantwell*, 988 S.W.2d at 55–56. Additionally, any retroactive additional compensation would be strictly permissive.

### CONCLUSION

We do not find sufficient evidence in the 1999 meeting minutes to support a conclusion that Public Administrator "duly and timely requested additional compensation for the years 1997 and 1998" pursuant to section 473.739.1 or that the 1999 Salary Commission approved such a request. The trial court erred in finding otherwise.

The trial court further erred in finding that County had insufficiently compensated Public Administrator for the years 1997 and 1998. Because Public Administrator's annual salary should have been set at $4,000 under section 473.739.1, the trial court properly ordered County not to follow the 1995 Salary Commission's motion to pay Public Administrator a $5,100 annual salary. Section 473.739.1 guarantees Public Administrator only $4,000 annual salary and, as we have discussed, there was not sufficient evidence to conclude that the 1999 Salary Commission approved additional compensation for Public Administrator pursuant to section 473.739.1 for his work in 1997 and 1998.

At most, the 1999 Salary Commission minutes suggest that discussion of salary for Public Administrator at that meeting focused on the salary to be paid for the 2001 term. Without eliciting further testimony from the parties explaining the actions of the 1999 Salary Commission, it is unclear what evidence of a retroactive request the trial court used in forming its decision in favor of Public Administrator.

For the foregoing reasons, County's point on appeal is granted and we reverse the trial court's judgment. In light of our holding in *Pate I* and the instant case, the proper remedy for Public Administrator is to attend the next meeting [11] of the salary commission to request additional compensation of as much as $10,000 for each completed year of his term in which he did not collect $45,000 in fees. When making his request, Public Administrator should provide evidence to the Salary Commission regarding the amount of fees he collected during the years for which he is seeking additional compensation.

11. Section 50.333 requires the Salary Commission to meet in odd-numbered years, but it allows the Salary Commission to meet as often as necessary during those years for the purpose of determining the compensation of county officials. Thus, the next meeting of the Salary Commission could be convened early in 2003 to consider the matter of retroactive additional compensation for Public Administrator.

The judgment of the trial court is reversed.

JAMES R. DOWD, P.J., and
CLIFFORD H. AHRENS, J., concur.